Points decided.

# E. L. BRADLEY AND M. S. GARDNER *v.* O. HARKNESS.

COPARTNERSHIP.—A copartnership is the result of agreement between the parties; and one of the firm cannot sell out his interest in the same, nor can a stranger buy in the same at pleasure. Where such purchase or sale is made *with* the consent of the firm, it works a dissolution of the partnership, and necessitates the final closing out and settlement of the old firm.

TENANCY IN COMMON.—A tenancy in common results from a rule of law, by which it is controlled and governed, and each cotenant sells out or incumbers his interest at pleasure, regardless of the knowledge, or consent, or wishes of coproprietors, without affecting the legal relation existing between them, beyond the going out of one and coming in of another.

DISSOLUTION OF TENANCY IN COMMON. — A mere desire of one of the tenants in common is sufficient to authorize the Courts to dissolve the relations existing between them.

DISSOLUTION OF COPARTNERSHIP.—A mere desire of one of the copartners is not sufficient to authorize the Courts to decree a dissolution of the same, and a settlement of its affairs, but cause must be shown.

COMPLAINT IN AN ACTION FOR PARTITION.—A complaint in an action for partition must aver that the cotenants hold and are in possession of real property as joint tenants or as tenants in common, in which property one or more of them have an estate of inheritance, or for life or lives, or for years; and if these averments are not made, it does not state facts sufficient to constitute a cause of action.

COMPLAINT BY ONE JOINT OWNER FOR AN ACCOUNTING AND SALE OF WATER DITCH.—A complaint in an action for an accounting touching the affairs, rents, and proceeds of a water ditch, and for a sale of the property and a division of the proceeds, which first avers in general terms a copartnership between plaintiff and defendants in the ditch, without averring any partnership agreement, and then states that plaintiff acquired his interest in the ditch by the purchase of an undivided interest from other persons than defendants, does not state facts sufficient to constitute a cause of action, either for a dissolution and settlement of the affairs of a partnership or for a partition.

RELATIONS OF OWNERS OF WATER DITCHES TO EACH OTHER.—The joint proprietors of water ditches in the mining districts, in the absence of any special facts constituting them something else, are tenants in common of real estate, and their rights in the ditches and sales of water are governed by the law of tenancy in common.

PARTITION OF WATER DITCHES, AND TAKING ACCOUNT.—In an action for partition of a water ditch, an account of the proceeds for water rates can be taken, and if one of the tenants in common holds a mortgage on the interest of his cotenants, *that* can be adjusted in the action by an application of the proceeds of the mortgagor's interest towards the payment of the same.

FORECLOSURE OF MORTGAGE IN ACTION FOR PARTITION.—In an action for partition, the plaintiff cannot foreclose a mortgage which he holds on defendant's interest in the property, and cut off defendant's equity of redemption by an absolute sale as in partition.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

The following is the complaint in this action :

"*E. L. Bradley and M. S. Gardner* v. *Osmyn Harkness and James Armstrong.*

"The above named plaintiffs, by their attorneys, complain of the above named defendants, and for cause of action aver, that on the 12th day of April, A. D. 1858, they, together with one Robert M. Trim, since deceased, under the name and style of the Dutch Flat Water Company, became the copartners of the defendant Harkness, in a certain water ditch situate in Township Number Four, county and State aforesaid, the same being constructed to convey water for mining purposes, commencing at a point on Cañon Creek, and conveying water therefrom to Gold Run, Indiana Hill, Gophertown, and Buckhorn Hill, being from five to six miles in length, and generally known by the name of the Indiana Ditch.

"That at the date aforesaid, they and the said Trim, since deceased, became and were the owners of seven nineteenths of the said Indiana Ditch, and in proportion as seven is to eleven, were copartners of the said Harkness therein. That on the 13th day of June, 1859, they, together with said Trim, since deceased, acquired one additional nineteenth interest in said ditch ; since which last mentioned date they and the said Trim, until his death, as hereinafter stated, under the name and style of the Dutch Flat Water Company, were copartners of the said Harkness in said ditch in the following proportions : the Dutch Flat Water Company had and owned eight nineteenths, and the said Harkness had and owned eleven nineteenths thereof. And plaintiffs further show, that the eight nineteenths of said ditch so held by the Dutch Flat Water Company as aforesaid, was the partnership property of said firm ; and that on or about, the 16th day of June, A. D. 1861, the said Robert M. Trim departed this life intestate, in the county aforesaid, since which time plaintiffs have been and are still the surviving partners of said firm, and have transacted their business under the same common name.

"And plaintiffs further show, that from the date of owner-

ship and copartnership with the said defendant, as hereinbefore stated, until the death of the said Trim, they and the said Trim, under the name and style aforesaid, were the owners of the said eight nineteenths, and copartners with the said Harkness in proportion to their said ownership ; and that since the death of the said Trim they have continued as surviving partners to own the said eight nineteenths of said ditch, and in that proportion copartners with the said Harkness.

"And plaintiffs aver, that said Harkness, on the 12th day of April, A. D. 1858, became a copartner with the said Dutch Flat Water Company in the ownership affairs and business of the Indiana Ditch aforesaid ; that his interest was then and ever since has been eleven nineteenths thereof, and his copartnership interest therein proportionate to his ownership as aforesaid.

"And plaintiffs further show, that the said Harkness has during the whole period of the copartnership aforesaid, managed and controlled its business and affairs, has had the same under his sole supervision, and has collected and received all the rents and profits arising from the sales of water from said ditch, which sales have amounted exclusive of expenses to the net aggregate of about the sum of nine thousand five hundred and fifty dollars, all of which he has retained and converted to his own use, except the sum of two hundred and sixty dollars paid over to plaintiffs during the year A. D. 1858. And the said plaintiffs, upon their information and belief, aver that the said Harkness is indebted to them in about the sum of four thousand dollars for money had and received by him, as their proportion of the proceeds from said ditch, and they aver that they have oftentimes, prior to the commencement of this suit, demanded of the said defendant to pay over to them their proportion of the said proceeds, and to render an account of the business and affairs of said copartnership, and that the said defendant has hitherto and still does obstinately and without any just ground refuse to settle with plaintiffs or to render an account, or to pay over plaintiffs' portion of the said proceeds, or any part thereof, except the said sum of two

hundred and sixty dollars before mentioned; and plaintiffs represent that their copartnership interest in said ditch, so long as it shall remain in the possession and under the control and management of the said Harkness, will be utterly worthless to them, and yield no income, and they say and aver, that said ditch property cannot be divided or partitioned without serious damage to the whole property.

" And plaintiffs further show that defendant Harkness, on the 7th day of July, A. D. 1860, executed, acknowledged, [and] delivered to the defendant Armstrong a mortgage on his undivided interest in said copartnership property, to wit: The ditch aforesaid, purporting to be given to secure a debt for two thousand one hundred dollars, bearing interest at the rate of two per cent per month from date until paid, which mortgage was recorded in the Recorder's office of Placer County, on the 10th July, A. D. 1860, and remains unsatisfied upon the record. And plaintiffs say that said mortgage was given to secure the individual indebtedness of the said Harkness to said Armstrong, and that the same and the demand therein mentioned are subject and subordinate to the rights of the plaintiffs as copartners of the said Harkness.

" Plaintiffs claim that the amount which may be found due them on a settlement of the said copartnership takes precedence and has priority over the said mortgage.

" Wherefore, the premises considered, plaintiffs pray the decree of the honorable Court for a dissolution of the copartnership existing between them and the defendant Harkness. They ask that an account be taken between them and the said Harkness, touching the affairs, rents, and property of said ditch, and for judgment against said Harkness for the sum which may be found due upon the taking of said account; that the sum so found due be decreed to have priority over the mortgage lien of said Armstrong; that said ditch be sold to the highest bidder for cash, after giving due notice of the time and place of sale, and the proceeds arising from such sale be applied as follows, to wit:

"*First*—To the costs of this action and the expenses of making said sale.

"*Second*—That eight nineteenths of said proceeds, after deducting said costs and expenses, be paid over to plaintiffs.

"*Third*—To the payment of the Armstrong mortgage.

"*Fourth*—The surplus, if any, to be paid to defendant Harkness. And plaintiffs further ask that they may be purchasers at said sale, and that after the application of the proceeds as may be directed by the Court, that the said Armstrong be decreed to satisfy his said mortgage.

"And plaintiffs pray for such other and further relief as equity sanctions, and for general relief.

"HALE & SMITH,
"Attorneys for Plaintiffs."

The defendant demurred to the complaint. The demurrer was overruled, and defendant answered. On the trial, plaintiffs recovered judgment, and defendant appealed both from the judgment and from an order denying a new trial.

*Charles A. Tuttle*, for Appellant.

*Tweed & Craig*, for Respondents.

The learned counsel for appellants objects that the record here embraces two theories, and that both cannot be right; that under the theory upon which this case was tried and judgment rendered, the judgment is erroneous, and must be reversed. We answer that if it were true that two theories are presented, yet if one of them will support the judgment, we may rely upon it—though the other may have been assigned as the ground of judgment; for a right judgment will not be reversed, because a wrong reason has been assigned for it. (*Helm* v. *Dumas*, 3 Cal. 454; *Mills* v. *Barney*, 22 Cal.)

All the facts necessary to support the judgment are pleaded and found. Appellant objects that the proceedings do not purport to be under the statute authorizing the partition of real estate. We are not aware of any rule of law which

requires that statute to be specially pleaded. All that our system of pleadings require, is a concise statement of the facts constituting the cause of action.

If the complaint shows a partnership at all, it shows it in both the ditch and its proceeds; and will it be contended that in an action to dissolve a partnership, there cannot be an accounting of profits already received, and also a distribution of the remaining assets of the partnership?

. Suppose, however, that we are wrong in this view—what follows? That simply a tenancy in common is shown with a right to partition, and that the averments touching the partnership and prayer for distribution were mere surplusage, which might, upon motion, have been stricken out.

The fact that there was a partnership relation between the parties, is the *ultimate, issuable* fact, which is to be proved by the evidence, if denied, and is, therefore, the only fact necessary to be averred in the pleadings. The way or manner in which this relation was created or existed, whether by a special agreement between the parties, or whether it arose by implication of law from the manner in which they conducted their business, or the acts, conduct, or speeches of. the parties, it is unnecessary to aver, because they are but *matters of evidence*, constituting not the *ultimate* fact, *but only the prior or probative facts*, the former of which it is alone necessary to aver, and where the latter are averred, it is bad pleading.

" It is the ultimate fact, and not the prior or probative facts, which should be set forth." (*Green* v. *Palmer*, 15 Cal. 416, where this subject of pleading is fully considered.)

The fact of a partnership is to be proved like any other fact, by evidence pertinent to the case. (*Hudson* v. *Swain*, 6 Cal. 455.)

It would be sufficient to show that the real estate was purchased with partnership funds for partnership purposes. (*Dupuy* v. *Leavenworth*, 17 Cal. 262.)

The business of selling water from a. ditch owned by the

parties, and the profits arising therefrom, may properly be regarded as partnership operations. (*Abel* v. *Love*, 17 Cal. 233.)

Partnerships are usually proved by the oral testimony of persons who know that the alleged partners have actually carried on business in partnership, and it is unnecessary to produce any deed or other agreement by which the copartnership has been constituted. (Collyer Part., Sec. 686, and note; 2 Greenleaf Ev. Sec. 479.)

It may exist in relation to interests in real estate, such as the working of a mine, and " when persons having purchased such an interest, manufacture and bring to market the produce of the land, as one common fund, to be sold for their common benefit, *it may fairly be contended that they have entered into an agreement which gives to that interest the nature and subjects it to the doctrine of a partnership in trade.*" (Story Part., Sec. 82.)

At the common law, no particular forms or solemnities are required to constitute a partnership between the parties. It is sufficient that it is formed by the voluntary consent of the parties.

The members of a joint stock company, the interest in which is generally represented by shares, can buy, sell, and incumber their interest at pleasure, and yet a joint stock company is but one form or kind of partnership. All the property of a joint stock company may consist of a mine, or a ditch, or other real estate, and yet it is still a partnership, and their property is still partnership property. (Story on Partnership, Sec. 164, 213; Collyer on Partnership, Secs. 1,078–1,098.)

The averment in this complaint " *that said ditch property cannot be divided or partitioned without serious damage to the whole property,*" was evidently inserted by the pleader to show that a division of the property in this way would not be for the best interest of the parties, and that therefore it should be sold. It is true that the word " partitioned " is used in connection with the word " divided;" but it is evident that it was not used in any such technical sense as that the pleader intended thereby to base his course of action upon a tenancy in common.

The whole complaint, from beginning to end, avers that the

parties held and owned the property as partners, and not as tenants in common, and there is therefore no just foundation for saying that the pleader rests his case upon these double relations of ownership.

By the Court, SANDERSON, C. J.

The demurrer to the complaint ought to have been sustained. It proceeds upon two legal theories which are wholly inconsistent. It first alleges a copartnership in general terms in the ditch, which is followed by allegations respecting the management thereof and its rents and profits. It then drops the copartnership theory and adopts that of a tenancy in common in real estate, and avers that the ditch cannot be divided or partitioned without serious injury, and asks that an account of the rents and profits may be taken and the ditch sold, etc. The pleader seems to have been unable to determine which was the true theory, and in his doubt and uncertainty, concluded to partially incorporate both in his complaint, being satisfied that one or the other must suit the facts to be developed by the evidence. In addition, and apparently for the purpose of completing his salmagundi, the pleader throws in a note and mortgage of the defendant upon his interest in the ditch, and asks that it may be foreclosed and defendant's equity of redemption cut off by an absolute sale, as in partition, of the ditch. This style of pleading, if allowed, would lead to most pernicious results. All correspondence between matters of allegation and matters of proof would be dispensed with and the judgment or decree allowed to proceed upon a theory of its own and not *secundum allegata*, but regardless of the pleadings.

We cannot, if so disposed, discard any part of the complaint as surplusage, for the complaint does not state facts sufficient to constitute a cause of action under either theory. In the absence of any special facts constituting them something else, the proprietors of ditches in the mining districts are tenants in common of real estate, and their rights in the ditch and in the

profits arising from the sales of water, although in the latter respect analagous to those of copartners, are governed by the law of tenancy in common. The ditch is real estate, and each proprietor buys in, or sells out, or incumbers his interest at pleasure, regardless of the knowledge, or consent, or wishes of his coproprietors, and without affecting the legal relation existing between them beyond the going out of one and the coming in of another. This cannot be done where a copartnership exists. One cannot buy in or sell out of a partnership at pleasure. Such an act would of itself work a dissolution of the partnership and necessitate its final settlement and closing out. A tenancy in common results from a rule of law by which it is also controlled and governed. A partnership, on the contrary, is the result of agreement between parties, which also supplies the rules for its government. The former relation is undisturbed by a change of tenants, but the latter admits of no change as to its members; and where a change takes place by the consent and agreement of all the parties concerned, the old firm is thereby dissolved and a new one created. Thus the incidents annexed to each have a different origin and are diverse. Also, the proceedings for a dissolution of these relations are different and are grounded upon entirely different facts. As to the first, the mere desire of one of the tenants is sufficient to set the Courts in motion ; but as to the latter, cause must be shown.

The complaint in this case does not aver a contract of copartnership between the plaintiffs and defendant; on the contrary, it is apparent from the facts, so far as they appear, that there was no partnership between them. The averment is that the plaintiffs, on the 12th of April, 1858, under the style of the Dutch Flat Water Company, became the copartners of the defendant Harkness in a certain water ditch, describing it. In the next paragraph it is shown how they became copartners by the averment that at the date aforesaid they became the owners of seven nineteenths of said ditch, and thus as seven is to eleven, became the copartners of the defendant. The two allegations must be read together. So

the idea of a copartnership is grounded entirely upon the fact of a purchase by the plaintiffs of an interest in the ditch in which the defendant was and had been a part owner with plaintiffs' grantors, and not upon any contract of copartnership between them and the defendant. After what has been said, it is hardly necessary to add that a partnership with defendant was not the result of the plaintiffs' purchase. Upon the partnership theory, therefore, the complaint fails for the want of facts to uphold it. Upon the theory that the action is brought for a partition of real estate, the complaint is equally defective, because the primary facts upon which a right to a partition is founded (section two hundred and sixty-four of the Practice Act) are nowhere averred.

So far as the real facts of the case can be surmised by the dim light afforded by the record, the plaintiffs' remedy is by suit for partition. In such an action the mortgage claim of the plaintiffs can be settled and adjusted, and, as collateral to the main question, an account of the water rates can be taken and the rights of the parties therein respectively ascertained.

The judgment is reversed and the plaintiffs allowed to amend their complaint upon the payment of the costs on this appeal and the costs of the former trial in the Court below.