ESTELLA MAY REED, Respondent, v. UNION COPPER
MINING CO. et al., Appellants.

## No. 1958; June 10, 1870.

**Actions—Joinder of Causes Legal and Equitable.**—The Practice Act authorizes the joining of several causes of action, subject to certain restrictions, but contains no requirement that the causes of action thus united shall be either all of a legal or all of an equitable nature.

**Actions—Legal and Equitable Relief.**—Although both legal and equitable forms of relief may be obtained in the same forum, the same substantial differences between them exist now as of old, and to obtain the relief formerly administered by courts of equity one must establish the same facts as when relief was obtainable only in those courts.

**Equity.—One of the Main Distinctions Between Law and Equity** is that at law a party usually receives compensation in damages, while equity gives a more specific remedy according to the circumstances of the case, and generally only in those cases in which compensation in damages would not be a complete and adequate remedy.

**Equity.—In Order to Invoke Equity, Under the Practice Act,** the same circumstances must be made to appear as under the old system showing the inadequacy of the remedy at law, or some other ground of equitable interference.

**Ejectment—Bill of Discovery.**—In Ejectment the Plaintiff cannot, under California practice, require a bill of discovery in aid of his action, since under that practice he may probe the defendant's conscience by requiring an answer under oath or may call the defendant to the stand as a witness.

**Equity has No Jurisdiction of an Action for Damages Merely, Unless** under peculiar circumstances, where the party injured cannot maintain his action at law.

**Action—Joinder With Ejectment.**—Two Causes of Action are Inconsistent, as set up in an action of ejectment, if the defendant is asked to be found virtually a trespasser under the one, while under the other he is alleged to have entered as the plaintiff's guardian to manage the estate for the plaintiff; such causes cannot properly be joined.

**Actions—Joinder.—The Object of the Sixty-fourth Section of the Practice Act** was to authorize parties to unite causes of action which already existed, and not to give additional causes of action. It was not contemplated therein that the right to an account should follow the recovery in ejectment.

Deeds—Parol to Explain.—When, of Many Tenants in Common, among whom are a father and daughter, the former makes,-for a nominal consideration, a deed to another absolute on its face and presenting no patent ambiguity, and on the same day this person makes, for the same consideration, a like deed to the daughter, parol evidence is not admissible years afterward to prove this second deed to have been intended as a mere confirmation to the daughter of the interest already held by her when such deed was made.

APPEAL from Eleventh Judicial District, Calaveras County.

Clark & Carpentier for respondent; H. & C. McAllister for appellants.

For subsequent opinion, see page 598, post.

TEMPLE, J.—The complaint in this case is in two parts. The first is a complaint to recover possession of the property in controversy, which is a mine, and damages for its detention. The second part is in the nature of a bill in equity, asking for an account of the rents and profits during the period of the ouster, and for the appointment of a receiver. In the statement of each cause of action the plaintiff claims to be the owner of two-thirteenths of the mine, but it does not appear from the complaint that any of the defendants claim any interest in it whatever.

Under the first count or cause of action the plaintiff has a complete remedy for the alleged wrong she has suffered, but she could not obtain, nor does she need, an account of the gold extracted from the premises during the time they were occupied by the defendants.

The complaint is demurred to, on the ground that two causes of action have been improperly united, in this: 1st. The first cause of action is at law, and the second in equity; 2d. The two causes of action do not both belong to any one class enumerated in section 64 of the Practice Act; and 3d. The two causes of action are inconsistent with each other.

The first objection finds no support in the Practice Act of this state. That act provides for only one form of action for the enforcement and protection of private rights and the redress and prevention of private wrongs. The plaintiff is required to state the facts constituting his cause of action in ordinary and concise language, and if those facts are estab-

lished, the court will give him the relief to which they entitle him, whether that relief be legal or equitable or both.   In either case it is a civil action to be commenced and conducted under the same code of procedure.   The Practice Act authorizes the joining of several causes of action, subject to certain restrictions, but contains no requirement that the causes of action thus united shall be either all of a legal or all of an equitable nature: Gates v. Kieff, 7 Cal. 125; Natoma Water & M. Co. v. Clarkin, 14 Cal. 547; More v. Massini, 32 Cal. 590.

The inherent and substantial difference between law and equity as two distinct and separate sciences, it is often said, has not been abolished by the Practice Act, nor, indeed, could it be, for it is a difference existing to some extent by definition.   They are recognized as distinct jurisdictions or grounds of classifications by the constitution of the state, which confers original jurisdiction upon the district court and appellate jurisdiction upon this court of all cases in equity, and also of certain classes of cases in law.   Although both species of relief are now obtainable in the same forum, the same substantial differences exist, and to entitle one to the relief formerly administered by courts of equity, he must establish the same facts as when relief was obtainable only in those courts. One of the main distinctions between the two jurisdictions is, that at law a party usually receives compensation in damages, while equity gives a more specific remedy according to the circumstances of the case, and generally only in those cases in which compensation in damages would not be a complete and adequate remedy, and under the Practice Act the same circumstances must be made to appear, showing the inadequacy of the remedy at law, or some other established ground of equitable interference.

In this action, as I have said, the plaintiff had an adequate and complete remedy at law.   She could, in her action of ejectment, recover damages measured by the value of the rents and profits, and also the waste, if any, of the premises.   She could not require a bill of discovery in aid of her action, for under our system she may probe the conscience of the defendant by requiring him to answer under oath, or she may call him as a witness upon the trial.   One of the most common cases under the former system of divided jurisdictions, in which a bill for an account was sustained, was as auxiliary

to, or at least joined with, a bill of discovery. Under the present system this ground does not exist.

Equity has no jurisdiction of an action for damages merely, unless under peculiar circumstances, where the party injured cannot maintain his action at law. It is true that in certain cases he may bring his action for an injunction to stay future waste, and that having obtained jurisdiction for the purpose of prevention, the court proceeds to do complete justice, to avoid a multiplicity of suits. The satisfaction given for damages already committed is entirely incidental, and forms no ground of equitable jurisdiction, and the rule in such cases is often tersely expressed, "No injunction, no account." It has never been supposed that equity has any jurisdiction for the purpose of an account of damage already done. Equity does not deal in damages, and exists as a science solely because damages, which is almost the only relief known to the common law, is not always an adequate compensation for a wrong committed, or cannot always be obtained. The Practice Act has not changed the rule in this respect, and does not give equitable relief, when formerly it could not be had. No injunction is asked for in this case, nor is there any danger of future waste, and when it is admitted that the plaintiff can recover the same damages in his first count, it must follow that the second count cannot be sustained, unless she has shown some special reason for equitable interference.

The ground mainly relied upon in this case, to sustain this count of the complaint, is that the plaintiff is an infant. Formerly a party was required to establish his title or right of possession in an action at law in ejectment, before he could maintain a suit for mesne profits. After his title had been thus established, he was allowed, if an infant, in case where a stranger had intruded upon his land, either at law or in equity to compel an account of the rents and profits, and to charge the intruder as guardian or bailiff: 1 Story's Eq. Jur., sec. 511. That is to say, the infant was allowed to waive the tort and charge the intruder as though he had undertaken to manage his estate as guardian or bailiff.

It is not material now to inquire whether, under our system, a suit of this character could be maintained. The question is, whether such relief can be had in the same action

which is brought to establish the right, and to recover the land in an action of ejectment.

The foundation of the first cause of action is, that the defendants went upon the land as trespassers denying the title of plaintiff. The theory of the second count is, that they went upon the land in her employ as her guardian, agent or bailiff, to take care of the property for her benefit. The court is asked to establish these opposite conclusions from the same facts and by the same judgment, or rather it is asked to try the case upon two opposite and repugnant theories. To sustain the action of ejectment, the court must find that defendants were trespassers, to sustain the other, that they were in possession under some relation of trust and confidence, and that they were managing the estate for the benefit of the plaintiff. Thus the finding, to support either count. would show the plaintiff not entitled to the relief demanded in the other. The two causes of action are entirely inconsistent and ought not to have been joined: Lamport v. Abbott, 12 How. Pr. 341; Bradley v. Harkness, 26 Cal. 69, 76.

It is quite evident that plaintiff can find no support for this pleading in the second subdivision of the sixty-fourth section of the Practice Act. That provision has reference to such damages for the withholding of the premises as were formerly recoverable in an action of trespass for mesne rents and profits, which action was the natural consequence of and subsidiary to the action of ejectment. The modern action of ejectment was a fictitious proceeding. It was brought by a fictitious plaintiff against a casual ejector, and as a consequence of these fictions nominal damages only were recovered, and the real damages were obtained in the action of trespass which followed. It was natural that in doing away with these fictions the legislature should provide that all might be accomplished in one action. The object of this section was to authorize parties to unite causes of action which already existed, and not to give additional causes of action. The right to an account did not follow the recovery in ejectment, except under peculiar circumstances, and it cannot be supposed, therefore, that such remedy was contemplated by this section, especially when the right to this remedy depends upon facts inconsistent with those necessary to sustain the action of ejectment. That this must be so is more evident when we

remember that the rule of damages or compensation would be different in the two forms of action. The theory of the action of ejectment is, that the defendant is in the adverse possession. In such case the plaintiff is not entitled to recover the crops grown upon the land, or the actual profit made, but only the value of the use and occupation, and for waste or injury to the substance of the estate. Where an account is decreed in equity, the actual profits are recovered, on the ground that the defendant was agent, bailiff or guardian, or occupied some relation of trust or of control, or that, the title not being in dispute, the plaintiff was the owner of the identical thing severed from the soil, or in lieu of it its full value. In this particular case the trespass consisted in removing the substance of the estate itself, and the rule of damages would perhaps be the same, but the action more frequently has reference to agricultural land, where there might be a vast difference between the value of the crop or the actual profits and the value of the use of the land.

Although these considerations would dispose of the present appeal, yet, as the action for possession may be retried, it is not improper to express an opinion upon the question of the admissibility of the evidence offered to show what particular interest was conveyed by the deed from Meador to the plaintiff.

The plaintiff, who is an infant, was one of the original locators of the mine. The rights acquired under this location have never been lost or forfeited, but for some reason several of the original locators, apprehending that the location might not prove valid, made a second location, in which new location most of the original parties joined, but the plaintiff was omitted, and the name of Meador substituted for hers.

Afterward W. K. Reed, the father of plaintiff, conveyed to Meador for the nominal consideration of one hundred dollars, one-thirteenth of the mine—that being the exact portion to which each original locator was entitled. After this deed and on the same day, Meador conveyed to plaintiff, for a similar consideration, one-thirteenth. W. K. Reed then made a second conveyance to Meador, purporting to convey one-thirteenth. The consideration of this deed was two thousand dollars. Prior to the day on which these conveyances were

made, Meador had acquired and then held two-thirteenths of the mine.

The defendants sought to prove by parol that the particular thirteenth intended to be conveyed by Reed to Meador in the first conveyance was the thirteenth claimed by plaintiff under the first location. That the deed from Meador to plaintiff was to confirm plaintiff's title to this thirteenth, and that Reed, by his second deed, attempted to reconvey this same interest of his daughter to Meador.

The counsel for defendants cites · numerous authorities, which, as I understand them, tend to establish three propositions within the reason of which it is claimed this case falls: First. Parol evidence will be received, when necessary, of the circumstances under which the deed was executed, to place the court in the position of the parties and to enable it to apply the language of the instrument to the proper subject matter; Second. Even where no fraud or mistake is alleged, parol evidence will be received to show that a deed absolute on its face is a mortgage; and Third. Parol evidence is admissible to show whether the consideration of a deed to a married woman was her separate property, or belonged to the community, and thereby to establish the status of the property conveyed as separate or community property.

The plaintiff disputes neither of these propositions, but denies that this case is within them.

In this discussion I shall speak of the first deed, as the same reasoning applies to all. In this deed there is no patent ambiguity. On its face it seems certain in every respect. It suggests no doubt as to the parties, the consideration, the property conveyed, or the estate or interest in it which was intended to pass. Nor, interpreted by any ordinary rules of construction, does the evidence received or offered tend to raise any doubt in any of these respects, but, having established a thirteenth as an understood division of the mine among the original locators, each being recognized as a separate source or origin of title to the different interests held, it is contended that evidence is competent to show which of these original interests was conveyed. It is not pretended that there is any doubt as to the thing of which this is a fractional part. The unit is the mine. The fraction, of course, cannot

38

be ambiguous of itself. Each thirteenth is the exact equivalent of each other thirteenth. They are absolutely indistinguishable from each other. The evidence cannot, therefore, be intended to identify the thirteenth or fractional part conveyed, but to show that no interest really passed, or that it was a less interest, or was subject to some encumbrance not mentioned in the deed. But to do this would be to contradict the deed or to change its effect, or to add conditions not expressed in it.

Suppose, for instance, one of the two thirteenths owned by Meador had been conveyed to him after it had been mortgaged, and was taken cum onere, and the other was clear. If Meador then had conveyed an interest equal to one-thirteenth of the mine, saying nothing in the conveyance to make it subject to the encumbrance, the effect of the conveyance would be, that the purchaser would take a thirteenth unencumbered. If parol evidence could then be received to show that the encumbered interest was intended, it would change the legal effect of the conveyance, and make a contract for the parties differing materially from the one they had executed. To admit such evidence in this case would be to defeat the deed entirely, for it would show that no interest at all passed.

The case is not at all analogous to the cases cited, in which parol evidence has been received to prove a deed absolute on its face a mortgage. Those cases are professedly based upon the peculiar doctrine of equity in regard to mortgages, which grew up from the right of redemption formerly allowed by those courts, although by the terms of the conveyance the estate had been forfeited. In these cases parol evidence was admitted to show the relation between the parties, and the circumstances under which the instrument was executed, not for the purpose of contradicting or varying the deed, but, as was said, to establish an equity superior to its terms: Peirce v. Robinson, 13 Cal. 116, 125. This right to show the intention of the parties by parol evidence is claimed to be incident to the relation of mortgagor and mortgagee, and is not a general rule of evidence. The defendants here do not attempt to establish a superior equity to control the terms of the deed, but to defeat the legal effect of its language by parol evidence.

Neither does this case fall within the third proposition, nor is it at all analogous to it. In that case the evidence does not

change the effect of the deed in any respect. In any event the title has undoubtedly passed to the wife as granted, but if the consideration for the conveyance was from the community, the law of the marital relation makes it common property, and by the same law the husband can dispose of it. I think the evidence was properly excluded.

The questions raised by Oakes Ames in his appeal, so far as they have not already been considered in this opinion, relate principally to objections to the evidence, which may not exist or be raised upon the new trial. It is evident that the action cannot be maintained against those not in possession at the time suit was brought, and the fact that rents and profits are sued for does not authorize the plaintiff to join as defendants persons whose possession had entirely ceased before the action was commenced. And if upon the new trial this should appear to be true of any of the defendants, they will be entitled to judgment.

I think the demurrer should be sustained.

CROCKETT, J.—As I construe section 64 of the Practice Act, there was no misjoinder of causes of action in this case. Under the second subdivision of that section, there may be united in one action "claims to recover specific real property, with or without damages, for the withholding thereof, or for waste committed thereon, and the rents and profits of the same." Under our code, legal and equitable remedies may be enforced in the same action, provided they fall within either one of the subdivisions of section 64. In the first cause of action stated in the complaint, the plaintiff seeks to recover "specific real property," to wit, two-thirteenths of a mine; and in the second cause of action, damages for waste committed on the same mine, "and the rents and profits of the same." It is true, the damages for waste and the rents and profits might be recovered under the first cause of action stated in the complaint; but in many cases, of which this is perhaps an example, it would be impossible to ascertain the waste or the rents and profits without the statement of an account. The working of an extensive and valuable mine for a series of years, involving large expenditures, and the sale of its products from time to time, amounting, it may be, to hundreds of thousands of dollars, could not be ascertained,

with any reasonable degree of accuracy, without a careful accounting, based upon information to be derived, chiefly perhaps, from the books and papers, officers and agents of the defendants. I perceive no valid reason why this accounting may not be had, under section 64, in the same action for the recovery of the mine or an interest therein. It is said that this cannot be done because the action to recover the mine is in the nature of trespass, whilst the action for an accounting is founded on contract. This would doubtless be a valid reason why the two actions could not be united at common law. But was not this precisely one of the reforms contemplated by the second subdivision of section 64 above quoted? Does not that section expressly enact that there may be united with the action to recover the property a demand for waste and for rents and profits? The sole purpose of that section was to avoid a multiplicity of suits, and a needless circuity of action; and though a demand for an accounting for waste and for rents and profits may, technically speaking, be deemed to be founded on an assumption that the defendants were not trespassers, nevertheless we can perceive no practical inconvenience to result from uniting with an action for the possession a demand for waste and for rents and profits, to be ascertained by an accounting; and inasmuch as the statute, without a forced interpretation of its language, and without doing violence to its spirit, appears to admit of that interpretation, we perceive no reason why such a course of procedure should be deemed objectionable.

In such cases, if the court should deem it advisable to try the action for the possession first, an accounting would, of course, be needless, if the plaintiff should fail in the action at law. On the other hand, if the plaintiff should establish his right to the possession, the accounting might then be had before the final judgment was entered. But it is sufficient, on this point, to say that, in my opinion, the statute authorizes this course of proceeding; and I can perceive no practical inconvenience to result from it.

I concur with Justice Temple in the opinion that the court properly excluded the parol evidence offered by the defendants, for the purpose of showing what particular thirteenth of the mine was intended to pass by the deed from Meador to the plaintiff. The effect of the evidence, if admitted, would

have been to defeat the deed altogether as an operative convey-ance, and to have shown that the plaintiff acquired nothing thereby, notwithstanding Meador had an interest which would have passed by the terms of the deed. This would have been directly to contradict the deed by parol evidence, which can-not be done.

But it appears from the findings and proofs that some of the defendants were not in possession of the mine at the time of the institution of the action, nor at any time after Novem-ber, 1863; but the court awards against such of the defend-ants as were in possession prior to November, 1863, the pro-portion of the profits and income of the mine to which the plaintiff was entitled up to that date, and against such of the defendants as subsequently had the exclusive possession, the plaintiff's proportion of the income and profits which subse-quently accrued. In this the court erred. Section 64 of the Practice Act confers no authority to unite with an action for the recovery of real estate a demand for rents and profits or for waste, against parties not in possession, and who are not shown to have any interest in common with those in the actual possession. The action to recover the possession must be brought against those in the actual possession and those only. But if the plaintiff was permitted to bring into that action all those who, at some prior time, had wrongfully received the rents and profits, or committed waste upon the property, and could recover against each one severally his proportion of the rents and profits received, or his share of the damages for waste committed, it is evident that a dozen or more inde-pendent actions, having no proper relation to each other, and with defendants having no community of interests, would thus be consolidated into a confused mass, incapable of intelligent adjudication. The Practice Act contemplates no such min-gling together in one action of heterogeneous and often dis-cordant elements, having no necessary or proper relation to each other. In my opinion, the accounting should have been confined to the parties in possession, when the action was com-menced, and that the other defendants were entitled to judg-ment.

For this reason, the judgment ought to be reversed, and it is so ordered.

We concur: Sprague, J.; Rhodes, C. J.