[Civ. No. 1796. First Appellate District.—December 28, 1916.]

## H. M. GOLDBERG, Respondent, v. BERNARD GETZ, Appellant.

TENANTS IN COMMON—SALE OF INTERESTS—RECEIPT OF GREATER SUM BY ONE TENANT—FAILURE TO ADVISE OTHER—VALID CONTRACT.— A contract made between a tenant in common and the purchaser of his interest in the common property by the terms of which the tenant was to receive a greater sum for his interest than his cotenant, is not void, by reason of the failure to reveal the existence

of such contract to the cotenant, where in making the sale of their respective interests, each tenant acted independently of the other.

ID.—SALE OF INTERESTS IN COMMON PROPERTY—RIGHT OF COTENANT.—While ordinarily cotenants, by virtue of their unity of interest, sustain toward each other a *quasi*-confidential relation with reference to the common property, and therefore the act of one cotenant when dealing with the common property, if beneficial, will inure to the benefit of the other, and neither will be permitted to deal with the property to the detriment of the other, such relation of mutual trust and confidence, however, does not extend to and will not in and of itself operate to impair the right of one cotenant to dispose of his interest without consulting his cotenant at any time and for the best price obtainable.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Leon Samuels, for Appellant.

Goodfellow, Eells, Moore & Orrick, for Respondent.

LENNON, P. J.—This is an appeal from an order denying the defendant a new trial after judgment in favor of the plaintiff in an action instituted for the recovery of the sum of one thousand five hundred dollars, the amount of a check drawn by the defendant on the Crocker National Bank in favor of the plaintiff's assignor, and upon which payment was stopped.

The facts of the case upon which the findings and judgment of the trial court rest are practically undisputed, and in substance are these: Plaintiff's assignor, Jacob Goldberg, was a tenant in common of the Keil Estate Company, a corporation, of certain real property consisting of twenty lots situate in the city and county of San Francisco, each owning an undivided one-half interest therein. On August 1, 1908, and during the absence of Goldberg in Europe the Keil Estate Company signed a contract with one Lucas, who represented the defendant Getz, whereby it agreed to sell the lots for the sum of twenty thousand dollars. The name "Goldberg Estate Company" was also signed to this agreement by E. A. Keil, the president of the Keil Estate Company, but it was an

admitted fact in the case that there was no Goldberg Estate Company in existence, and that Keil had no authority to act for or bind Goldberg in the transaction in suit or in any manner. There was, however, in force at this time another instrument executed by Goldberg and the Keil Estate Company, authorizing Baldwin & Howell, real estate brokers, to sell the same property. Upon Goldberg's return from Europe, which was shortly after the Keil Estate Company had executed the contract of sale first above mentioned, Lucas, the agent of the defendant Getz, endeavored to persuade Goldberg to sell his one-half interest at the same price at which the Keil Estate Company had agreed to sell, viz., ten thousand dollars. Goldberg declined, and he so informed the Keil Estate Company. Later, however, and prior to October 8, 1908, Getz and Goldberg agreed to a sale of the latter's interest in the property at an advance of one thousand five hundred dollars upon the price agreed to be taken by the Keil Estate Company for its interest; and thereupon Getz executed and delivered to Goldberg a memorandum, prepared and presented by the former's attorney, reading as follows: "Upon actual consummation of sale of real property and delivery to me of deed according to terms of an agreement this day made by Keil Estate Co. and Jacob Goldberg, I promise to pay to Jacob Goldberg the sum of $1,500. Dated October 8, 1908. (signed) B. Getz." Immediately thereafter and as a result thereof there was drafted and inscribed with pen and ink on the reverse side of the contract of sale previously executed on August 1, 1908, an agreement dated October 8, 1908, signed by both the Keil Estate Company and Goldberg, whereby they, as owners of the property, agreed to sell the same to Getz for the sum. of $20,250, $250 of which was to be applied in payment of any claim for a commission which Baldwin & Howell might make for alleged services. The Keil Estate Company was not aware of the secret separate agreement to pay Goldberg the additional one thousand five hundred dollars until so informed by Goldberg on the following day after the close of the transaction. Although fully informed of Goldberg's positive refusal to accept ten thousand dollars for his interest in the property, neither the Keil Estate Company, nor anyone on its behalf, made any inquiry of Goldberg at or prior to the consummation of the sale concerning the price which he was to receive for his interest. Pursuant to the con-

tract of sale ultimately made, a deed conveying the property to Getz was executed and delivered to him, and thereupon he drew and delivered to the Keil Estate Company, through the medium of a title insurance company through which the transaction was closed, a draft upon the Mercantile Trust Company in the sum of $9,873, and at the same time drew and delivered to Goldberg in the same manner a similar draft in a like amount. Getz and Goldberg then went to the Crocker National Bank, where the check in suit, dated October 13, 1908, and the agreement of October 8, 1908 (wherein Getz promised to pay the sum of one thousand five hundred dollars to Goldberg) were delivered to an officer of the bank, with instructions that the check was to be surrendered to Goldberg when the deed to the property was recorded. Immediately following the recordation of the deed Getz stopped payment of the check.

It will be noted that no claim was made in the lower court, and none is made here, that the execution of the contract in question by the Keil Estate Company was induced by any misrepresentations of Goldberg made to all or any one of the parties to the transaction. With these facts as a basis it was the contention of the defendant in the trial court that the secret separate contract was conceived and consummated in fraud, and that the consideration for the contract being therefore void, the check in suit—which rests upon the contract—was without a valid consideration to support it, and consequently that public policy will intervene and forbid the aid of the courts to enforce its payment.

In support of this defense it is argued here that tenants in common by operation of law occupy a confidential relationship with reference to the common property, and that Goldberg, as the tenant in common of the Keil Estate Company, violated the obligations of that relationship by failing to reveal the existence of his contract with Getz, and thereby perpetrated a fraudulent concealment upon his cotenant which resulted in detriment and disadvantage to the latter.

The defense thus interposed to the action cannot be sustained upon the theory that Goldberg, as the cotenant of the Keil Estate Company, was obliged to disclose the price which he, without the knowledge or assistance of his cotenant, received for his interest in the common property. Ordinarily cotenants, by virtue of their unity of interest, sustain toward

each other a *quasi*-confidential relation with reference to the common property, and therefore the act of one cotenant when dealing with the common property, if beneficial, will inure to the benefit of the other, and neither will be permitted to deal with the property to the detriment of the other. This relation of mutual trust and confidence, however, does not extend to and will not in and of itself operate to impair the right of one cotenant to dispose of his interest without consulting his cotenant at any time and for the best price obtainable; that is to say, in the absence of contractual relations, express or implied, existing in conjunction with the relation of cotenancy, there is nothing in the obligation of mutual trust and confidence which accompanies the latter relation which prevents one cotenant, acting independently in his own behalf, from demanding and receiving for a sale of his interest a greater sum than that paid to the other. (*Garr* v. *Boswell* (Ky.), 38 S. W. 513; *Harris* v. *Lloyd,* 11 Mont. 390, [28 Am. St. Rep. 475, 28 Pac. 736]; *O'Neal* v. *Cooper,* 191 Ala. 182, [67 South. 689]; note to *Garthwaite* v. *Janney,* 48 Am. St. Rep. 62; *Bradley* v. *Harkness,* 26 Cal. 69.)

Of course if either party acting for himself and his cotenant had entered into negotiations with Getz for the sale of the common property, his act in fixing a price for the entire property would be for the benefit of both, and, therefore, aside from any obligation arising out of the relationship of cotenancy, good conscience and fair dealing would preclude either from secretly securing for his interest a greater price than that paid for the interest of his cotenant. No such situation, however, as we have seen, is presented here; and therefore no duty devolved upon Goldberg to reveal to the Keil Estate Company the price he was receiving. In the absence of such a duty his conduct did not amount to a fraudulent concealment.

It follows from what has been said that the evidence supports the finding of the trial court that the check in suit was given for a valid and lawful consideration.

The order denying the defendant a new trial is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1917.