**Ida Ruth LITTLE et vir., Appellants,**

v.

**Flora Alleene WILLIAMS et al., Appellees.**

No. 10246.

Court of Civil Appeals of Texas.

Austin.

Oct. 27, 1954.

Rehearing Denied Nov. 17, 1954.

167 acres in Runnels County, described as First Tract in the petition, and against proceeds from the royalty.

The land, on which the royalty interest is involved, had been given the four parties by the wills of their parents.

Harvey Dale Jones, on April 27, 1948, purporting to act as the agent for the H. O. Jones estate, contracted to sell the farm to Gattis Neely for a cash consideration, without any reservation.

Subsequently a deed dated May 12, 1948, was executed by all parties concerned conveying the land to Gattis Neely for a cash consideration moving to them in the sum of $12,981.25. This deed was acknowledged by Harvey D. Jones and wife on May 12, 1948, and by Flora Alleene Williams and husband and Mary Lena Boone and husband on May 17, 1948. Ida Ruth Little and husband acknowledged the deed on May 27, 1948.

By royalty deed dated May 25, 1948 and acknowledged the same date Gattis Neely and wife conveyed to Ida Ruth Little, wife of W. E. Little, for a recited consideration of $10, an undivided 1/64th interest in and to all of the oil, gas and other minerals in and under the tract of land, and fully described it.

On trial before a jury, on issues submitted, the jury found that the royalty deed was a part of the consideration for the sale of land to Neely, that Mrs. Little was under a duty to represent the appellees, and that appellees did not consent for Mrs. Little to receive the royalty interest as her individual property.

---

Scarborough, Yates, Scarborough & Black, Abilene, for appellants.

Bedford & Underwood, Paul Petty, Ballinger, for appellees.

ARCHER, Chief Justice.

This suit was instituted by appellees against appellants to impress a constructive trust against a royalty interest in a tract of

Appellants filed motion for instructed verdict which was overruled. After the verdict appellants filed motion for judgment notwithstanding the verdict, which was overruled.

Judgment was entered for appellees for the royalty interest sued for.

Appellants' Motion for New Trial was overruled.

The appeal is before this Court on fifteen points assigned as error and are that the court erred in overruling motion for instructed verdict because the plaintiffs had received the price for which they sold and had no interest in or concern with the interest acquired by Mrs. Little; that the parties were joint owners and sold the property and Mrs. Little was under no fiduciary or agency relationship and each party was charged by law with looking after his own interest; that Mrs. Little was not the agent of the plaintiffs and free to make her own deal with the purchaser; that the court erred in submitting Special Issue No. 1, because the evidence showed that plaintiffs received the consideration they contracted to receive; that there was no evidence to support a finding that the royalty deed had any reference to a consideration moving from Neely to plaintiffs; that it was error to submit Special Issue No. 2, a question of law, as to whether Mrs. Little was under a duty to represent the plaintiffs under the circumstances; that it was error to submit Special Issue No. 3, since the parties were joint owners and could act each for himself in the absence of any agency; that the answer of the jury to Special Issue No. 1 was without any support in the evidence; that the answer of the jury to Special Issue No. 2 was so against the great weight and preponderance of the evidence as to be clearly wrong, and without support, and could form no basis for a judgment.

The appellees contend that Mrs. Little acquired the royalty deed from Neely in a manner which is against good conscience and fair dealing, and that under the laws applicable to a constructive trust she acquired such royalty for herself and as a constructive trustee for her brother and two sisters, and that the issues were raised by the pleading and evidence, and answered favorable to plaintiffs, and the trial court correctly granted the judgment.

We do not believe that the evidence offered shows that either of the appellants, Mrs. Little or her husband W. E. Little, were ever the agent, agents or representatives of the appellees or either of them in any respect in connection with the sale of the property and in the acquisition of the royalty interest.

As we have noted above, on April 27, 1948, Harvey D. Jones as agent for the H. O. Jones Estate entered into the contract of sale of the land to Neely for a cash consideration, which was signed by W. L. Pratt as agent for H. O. Jones Estate, and by Gattis Neely as purchaser, and no mineral reservation was reserved.

The deed to Neely is dated May 12, 1948, acknowledged by Jones and wife on the same date, acknowledged by Mr. and Mrs. Williams and Mr. and Mrs. Boone on May 17, 1948, and by Mr. and Mrs. Little on May 27, 1948.

The royalty deed was executed by Mr. and Mrs. Neely on May 25, 1948, which is two weeks subsequent to the date of the warranty deed.

The contract price for the sale of the land was paid in equal parts to the four Jones heirs, after deducting Pratt's commission, abstract and revenue stamp charges, and deposited to the credit of the respective accounts in a bank in Winters, Texas.

Mrs. Williams testified that she read the deed before signing it and saw the amount of the consideration and was satisfied with it, and never asked anyone to try to hold back some royalty or mineral rights when she sold the place, and was not coerced into selling for the amount of money recited in the deed; that she did not ever authorize her sister, Mrs. Little, to act as her agent in selling the property, or to look after it in any way, and that so far as she (Mrs. Williams) was concerned, Mrs. Little had an interest to sell and that she had an interest to sell.

Mrs. Boone did not testify.

Harvey D. Jones wrote a letter to the appellants dated April 19, 1948, a time prior to the contract and the execution of the deed, in part as follows:

"I have heard from Mamye and Alleene and they are agreeable to a sale

at around the figure of $77.50 per acre. I am writing Mr. Pratt of their decision as well as mine. I will also mention to him that you are agreeable to the price but desire to retain the oil royalties and that he had better discuss the matter with you directly. I do this for the reason that I feel rather confident that no purchaser will be interested in buying unless he can purchase the fee simple to the property. Naturally I would like to retain whatever interests I could but it appears to be playing a long shot. There has been oil talk there and everywhere else in the United States for the past 40 years. I agree that some folks got a break and got wealthy from oil a few years ago and it could happen again but I doubt it. I suggest you discuss the matter with Mr. Pratt and see what can be done in respect to retention of royalties, then let me and the girls know the outcome."

Mr. Jones, on April 19, 1948, wrote W. L. Pratt the following letter:

"1428 West Alameda,
Denver, Colorado,
April 19, 1948.

"Mr. W. L. Pratt,
Winters, Texas.
"Dear Mr. Pratt:

"I now have a report from all of the girls and it seems that they are in agreement with me as to price, that is, $77.50 per acre for the farm. However, Ruth has expressed a desire to reserve some of the mineral interests which is an item that has not been discussed. For this reason I have suggested to her that she take the matter up with you directly in order that she may have first hand knowledge of the prospective purchaser's views on such items. Ruth also stated that you were taking a short trip to Colorado and for this reason I am writing our reply rather than wiring with the idea that it will probably get home by the time you will.

"It seems that you have picked a very good time to come to Colorado as the weather here has been very nice for the past few days. I support you are visiting

in Pueblo and the weather there should be even nicer than here at Denver.

"After you have discussed the proposed sale with Ruth and the prospect will you let me know what the outcome has been and maybe we can all get together on something. I dislike such a round-about way of doing business but in the circumstances there isn't any alternative.

"Yours very truly,
Harvey D. Jones."

On January 7, 1948, Mr. Jones wrote Mrs. Little in part as follows:

"Regarding the royalty question. The most we could possibly hope to reserve in any circumstances would be ¼th. On this basis each of us would have ¼th of ¼th of the royalty interest reserved, and whoever bought the place would have ¾ths royalty. It is not possible today to lease mineral rights for any more than ⅛th to any company or operator, that is the owner of the royalty interest only gets ⅛th and the lessee or operator gets ⅞ths. On this basis the result would be that each of us would get ¼th of ¼th of ⅛th of whatever production might result in the event oil might be discovered. With the present production prorations no one but the operator would get anything and he could not possibly get very much on a tract of land the size of this. In addition a reservation of royalty interest is no longer viewed with any favor, especially on small tracts. Anyone wishing to lease would have to get a separate lease from all of us and also from the owner of the land and possibly, if it should go into administration from the heirs of the owner of the land and by the time it got through, it wouldn't be worth it to any lessee to go into it. A reservation of the oil royalty also depreciates the value of the land as title can never be given free and clear. I think if you will consider the matter from all angles you will see that reservation of royalty in a sale is out of the question—however, you are entitled to your own opin-

ion and have your rights to require a reservation if you wish. When you figure it out if we reserved any interest we might count on receiving one barrel of oil out of each 256 produced—less some incidentals expenses—which wouldn't amount to very much, if anything. Although there may be oil there, we all know it is nothing like the East Texas field and production would be rather low and with spacing orders we probably couldn't get more than four wells if there was oil under every foot of the land which is highly improbable."

W. L. Pratt, the agent, testified that when he secured the listing that Mr. Jones told him that there would be no reservation and to forget it, that the mineral rights were not worth anything; that he did not try to get Mr. Neely to give the other three children an equal amount of royalty, because Harvey told him there would be no reservation.

The purchaser, Gattis Neely, testified that the question of the royalty came into the picture after he had signed the purchase contract with the understanding that he was to get all of the minerals but did not at that time consider that the royalty had any value to speak of.

Mrs. Little testified that she could not recall what, if anything, she paid Mr. Neely for the royalty; that she did not talk with him; that she wanted some royalty and that she had told her brother that she felt royalty should be reserved; that she did not talk to either of her sisters about the sale that she was acting for herself when she got the royalty; that she talked with Mr. Pratt about royalty; that she told her brother she was getting a part of the royalty; and that the royalty was not involved as far as the money that would be divided between them.

Each of the owners of the land received the price stipulated and contracted for and expected by them.

It is immaterial that Mrs. Little acquired what is equal to ⅟₆₄ths of the oil and mineral rights in question since she was not the agent of either of the appellees and did not purport to act as such.

The parties were joint owners of the land at the time of the sale and received the consideration set out in the contract and in the deed, and no fiduciary relationship existed on the part of Mrs. Little to the other parties, and each party was charged with attending to his own interest in the disposition of the property.

■ The appellees assert a claim of constructive trust, and that the royalty interest of Mrs. Little should be impressed with a trust for appellees. In no manner do the appellees testify that they ever relied on any statement or representation of Mrs. Little. There is no evidence that Mrs. Little had any knowledge as to the value of the mineral rights that was not common to all and no basis for fraud. The burden of proof was on the appellees to establish a trust by evidence that is clear, satisfactory and convincing and nothing left to conjecture. 42 Tex.Jur., Sec. 76, pp. 687–688, and cases cited; Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985; Sevine v. Heissner, Tex.Civ.App., 262 S.W.2d 218, error ref., n. r. e.; Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65.

■ Since the parties were tenants in common, one deals with the individual owners and not as a copartnership, each acts for himself and no one is the agent of another. 11 Tex.Jur., Sec. 50, p. 487; Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125; Tiffany on Real Estate, 3rd Ed., Vol. 2, p. 212.

■ The appellees had signed and acknowledged the deed before Mrs. Little executed it and were bound thereby.

Ward v. Walker, Tex.Civ.App., 159 S.W. 320, error ref.; Villarreal v. De Montalvo, Tex.Civ.App., 231 S.W.2d 964.

■ Appellees cite and rely on Kirkland v. Handrick, Tex.Civ.App., 173 S.W.2d 735, error ref., w. o. m., in which Bertha

Kirkland sued her brother H. A. Handrick to recover land, claiming ownership by virtue of being the beneficiary under a trust which she sought to have engrafted upon a deed executed by Frank Wolff, trustee to Handrick.

The property involved had been purchased by Mrs. Kirkland in 1936, then unmarried, in which transaction she paid some cash and executed a note for $4,500. In 1938 she married Frank W. Estes, which venture did not prove a happy one, and contemplating a divorce Mrs. Estes arranged with a bank to secure the money to pay off the debt then in process of foreclosure and a foreclosure was had and the property conveyed to Mrs. Kirkland's brother and after the sale and up to the time of filing the suit she paid the Bank all installments due on the note, as well as taxes. As soon as Mrs. Estes secured a divorce and a restoration of her former name of Kirkland, she requested her brother to convey the property to her and he refused.

There is no question but what Mrs. Kirkland owned the land prior to the foreclosure proceedings and had arranged for the money to pay off the mortgagee, and made the subsequent payments on a new obligation.

This case is not in point because Mrs. Little owned an undivided interest in the land and minerals and did not, by the royalty deed, obtain title to any property belonging to the other joint tenants, and she had the legal right to control and dispose of her own property as she saw fit. 33 Tex.Jur., Sec. 10, p. 943; Ward v. Walker, Tex.Civ. App., 159 S.W. 320, error ref.; Villarreal v. De Montalvo, supra; Goldberg v. Getz, 32 Cal.App. 418, 163 P. 221, and cases cited therein.

The judgment of the trial court is reversed and judgment here rendered for appellants.

Reversed and rendered.