Mary C. WILLIAMS, Petitioner,

v.

CULLEN CENTER BANK & TRUST, Respondent.

No. C–3273.

Supreme Court of Texas.

Feb. 20, 1985.

Baker & Botts, Mary C. Williams, Houston, for petitioner.

Margraves, Schueler & Parker, Craig E. Power, Houston, for respondent.

KILGARLIN, Justice.

Absent a written indemnity agreement or proof of benefit, can a nondrawing cosigner be liable for an overdraft in a joint checking account? The trial court said yes, and granted Cullen Center Bank & Trust a summary judgment against Mary C. Williams in the amount of $4,242.29 with an additional $1,600 allowed as attorney's fees. The court of appeals affirmed that judgment. 671 S.W.2d 711. We reverse the judgments of the courts below and remand this cause to the trial court.

Mary C. Williams maintained a checking account with T.M. Williams at Cullen Center. Although they were joint signers on the account, undisputed summary judgment proof showed that Mary C. Williams had never signed a check on the account nor ever made a withdrawal from that account. Somehow, the bank discovered an overdraft in the account. How the overdraft occurred is not known. Cullen Center's summary judgment evidence merely reflects that as of April 7, 1981, there was a negative balance in the account of $5,119.79. That negative balance was reduced by a $900 deposit on August 13, 1981, perhaps in response to a letter written to the Williamses two days previously advising of the negative balance.

Cullen Center filed suit on August 28, 1981, against both T.M. Williams and Mary C. Williams. Although served, T.M. Williams did not answer, and an interlocutory default judgment was taken as to him. After the summary judgment against Mary C. Williams was signed, a joint and several judgment was entered against both defendants. Only Mary C. Williams appealed.

Before embarking upon a discussion of the law in this case, we should point out that there is no contention that Mary C. Williams is liable under a community property theory as set forth in Tex.Fam.Code Ann. § 5.61. Neither are there summary judgment allegations that would make this court's holding in *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.1975), applicable. Indeed, there is no summary judgment proof that T.M. Williams is or was in fact the husband of Mary C. Williams. Therefore, this case must be decided on the basis of the Uniform Commercial Code, and applicable principles of agency, partnership and joint tenancy law.

In support of its position, Cullen Center relies upon Tex.Bus. & Com.Code Ann. § 4.401(a), which provides "[a]s against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." This provision entitles the bank to treat an overdraft as a loan by the bank, which carries with it an implied promise to repay.

Ms. Williams, on the other hand, argues that her signature alone on the account card is insufficient to establish her liability. She contends that the bank should be required to prove she benefited from the overdraft or participated in creating it. Since the bank's records do not reveal who created the overdraft, and since Ms. Williams positively avers that it was not she, we must decide if "customer" means the drawer of the item creating the overdraft, or if it can simply be one of the cosigners on the signature card. There are no Texas cases precisely in point.

However, several cases from other jurisdictions, as well as some commentators, support Ms. Williams' position. Professors White and Summers in their *Handbook of the Law Under the Uniform Commercial Code* at 662 (2d ed. 1980) recognize that under some circumstances, one party should be liable for his cosignatory's overdraft, such as when both parties enjoyed the use of the funds or when an explicit agreement existed that each would be liable. However, they conclude by commenting, "[i]n general we would suggest that the agreement [as to liability] should be manifested by something stronger than the fine print on a deposit agreement before

the bank should be permitted to hold a co-signatory on overdrafts of the other when the benefits of the overdraft were enjoyed only by one." *Id.*

Another commentator states "[t]he Code does not alter the prior rule that in the case of a joint account one cosignatory cannot be held beyond the balance in the account and that a joint deposit does not make each cosignatory the agent of the other with respect to the making of overdrafts." 3 R. Anderson, *Uniform Commercial Code* § 4–401:4 (1971).

Cases from other jurisdictions interpreting the Uniform Commercial Code favor Ms. Williams' position. *Cambridge Trust Co. v. Carney,* 115 N.H. 94, 333 A.2d 442 (1975), acknowledges that commentators are divided in their opinion as to the liability of a nondrawing cosigner. The New Hampshire court cites the paucity of case law from other jurisdictions on this subject, and concludes "[s]ince Mrs. Carney neither participated in the transaction creating the overdraft nor received funds as a result of it, she cannot be held liable for payment of it." In *National Bank of Slatington v. Derhammer (No. 1),* 16 Pa.D. & C.2d 286 (1958), a Pennsylvania lower court observed that were the bank's position to be upheld, "[e]very cosignature would constitute a partnership without limits as to the liability of one partner for the machinations of the other." *Id.* at 288.

*United States Trust Company of New York v. McSweeney,* 91 A.D.2d 7, 457 N.Y. Supp.2d 276 (1982), offers a well reasoned opinion favorable to Ms. Williams. There, the bank argued that Mrs. McSweeney should have been liable along with her husband for the amount of the overdraft because a broad construction should be given to the terms "account" and "customer" in the U.C.C. The New York appellate court disagreed, stating:

> The rationale for this holding is found in the law of agency and joint tenancy: 'The mere fact of ownership of undivided interests in the same property by two or more persons does not create an agency relationship between them, and ordinari-

ly one co-tenant cannot bind the other co-tenants by contracts with third persons, unless he is duly authorized or unless they ratify or acquiesce in his act.' (24 N.Y.Jur.2d, Cotenancy and Partition § 83 [citations omitted] ).

457 N.Y.Supp.2d at 279.

Cullen Center relies upon two cases with holdings adverse to Ms. Williams' position. The first, a pre-U.C.C. case, is *Popp v. Exchange Bank,* 189 Cal. 296, 208 P. 113 (1922). In that case Lenora S. Popp and Jay Popp were clearly identified as husband and wife. Without providing any reasoning behind its decision, the California Supreme Court stated that although Mrs. Popp thought she had never drawn any checks against the account, "nevertheless the overdraft was in law as much her indebtedness as that of her husband...." 208 P. at 115. Whether the basis of this opinion rests in the community property laws of California or on some other grounds is not revealed.

The other case against Ms. Williams was decided after the 1965 enactment of the Uniform Commercial Code in Missouri. In *Bremen Bank and Trust Co. v. Bogdan,* 498 S.W.2d 306 (Mo.Ct.App.1973), Mrs. Bogdan was a signatory on a business account with Mr. Bogdan, but she claimed it was only as a matter of convenience. Without expressing a rationale for its holding, the Missouri Court of Appeals stated "[n]evertheless, there was ample evidence to support the finding by the jury that Mrs. Bogdan as a joint tenant was liable on the overdraft." However, the Missouri court relied not on the U.C.C. for its decision, but upon Mo.Rev.St. § 362.470, which is a separate provision governing banks. Thus, although decided after adoption of the U.C.C. in Missouri, the *Bremen Bank and Trust* holding is easily distinguishable from our case.

Additionally, some commentators also agree with Cullen Center's position. While conceding that most states have implied that the promise to repay the overdraft is imposed only on the drawer and not on all members of an overdrawn joint account,

Dean William D. Hawkland advocates that the broad U.C.C. definitions of "account" and "customer" make any account cosignatory liable. 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code* at 385 (1964). Section 4–104 of the code defines "account" as meaning "any account with a bank and includes a checking, time, interest or savings account." "Customer" is defined as meaning "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." Hawkland rationalizes that as subsection 1 (subsection [a] in the Texas Business and Commerce Code) "speaks in terms of charging the account rather than in terms of charging the actual drawer of the check, it is believed that the subsection authorizes the bank to charge the payment on overdraft to all members of an overdrawn joint account."

Professor Barkley Clark arrives at the same conclusion as Dean Hawkland. Clark, *The Law of Bank Deposits, Collections and Credit Cards* 2–81, 82 (1981). Clark, likewise, recognizes that decisional law is adverse to his position, and recommends that the only prudent course for a bank is to place express language in the joint deposit agreement making one cosigner liable for the overdrafts of the other. A casenote, *Liability for Overdrafts of a Joint Bank Account Under the UCC,* in B.Y.U.L.Rev. 499 (1976) points out that the code itself:

> [S]tates that '[t]his Act shall be liberally construed and applied to promote its underlying purposes and policies.' One of those underlying purposes and policies is 'to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties.' To the extent the code encourages banks to pay overdrafts by allowing them to recover from the maker, it tends to promote this underlying purpose of expanding commercial practices.

*Id.* at 507. The same casenote reasons that U.C.C. § 4–401(1) was designed to both permit banks to pay overdrafts and to protect banks by giving them the legal right to recover the amount of overdrafts they pay. The note suggests that if all cosignatories are not liable, then "the frequency with which banks pay overdrafts of joint accounts would be reduced, and the underlying purpose of the U.C.C. to continue the expansion of commercial practices would not be served." *Id.* at 508.

■ Although Dean Hawkland is correct that the code should be construed broadly, that policy does not require that legal relationships should be written into the code where none exist. Indeed, one commentator has flatly rejected the Hawkland-Clark position for this reason, saying:

> To construe the Code to impose liability on each cosignatory of a joint account for all overdrafts would in effect establish an implied partnership without limit as to the liability of one signatory for loans obtained by another. From the language of § 4–401(1) it is not clear whether the drafters of the Code contemplated the liability of a signatory for an overdraft in a joint account. Since doubt exists as to whether the problem was examined fully in the development of the U.C.C., one should not conclude from definitional language that the drafters of the Code intended to imply such a partnership in a joint account.

Note, *Overdraft Liability of Joint Account Cosignatories,* 36 La.L.Rev. 1083, 1087–87 (1976).

As to allowing for continued expansion of commercial practices, requiring banks to have something more than a signature card to impose liability is not an onerous burden. Nothing prohibits banks from placing express language in a joint deposit agreement making one cosigner liable for the overdrafts of the other. Not only does this provide a potential basis for liability but it also allows the commercial practice of paying overdrafts to continue.

■ After examining the opposing arguments, we conclude that the position taken by the New York court is the most persuasive. Texas law in the areas of cotenancy and agency is similar to that of New

York. In *Home Owners' Loan Corp. v. Cilley,* 125 S.W.2d 313, 316 (Tex.Civ.App.—Amarillo 1939, writ ref'd), this court approved the general statement found at 62 C.J. 533 *Tenancy in Common* § 209 (1933):

> Under ordinary circumstances neither tenant in common can, in dealing with third persons, bind the estate or person of the other by any act with relation to the common property, not previously authorized or subsequently ratified, for cotenants do not sustain the relation of principal and agent to each other, nor are they partners.

Likewise, in *Myers v. Crenshaw,* 116 S.W.2d 1125 (Tex.Civ.App.—Texarkana 1938), *aff'd,* 134 Tex. 500, 137 S.W.2d 7 (1940), it was stated:

> The power of a co-tenant to act for and bind his co-tenants is aptly stated in 11 Tex.Jur. p. 487, as follows: 'Unlike the ordinary copartnership wherein each partner is the agent of all the others to transact the business, each owner in a cotenancy acts for himself and no one is the agent of another nor has any authority to bind him merely because of the relationship. So that, ordinarily, one dealing with property held in coparcenary can acquire only the rights of those individual cotenants with whom he bargains.' "

116 S.W.2d at 1129.

In a case where the parties were clearly labeled "joint tenants," *Lander v. Wedell,* 493 S.W.2d 271, 273 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.), the rule announced in *Myers v. Crenshaw* was applied. This rule has been upheld by other appellate courts in this state. *See, e.g., Elliott v. Elliott,* 597 S.W.2d 795, 802 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Hamman v. Ritchie,* 547 S.W.2d 698, 706–07 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.); and, *Little v. Williams,* 272 S.W.2d 409, 413 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.). Thus, on the reasoning of *McSweeney,* summary judgment was improperly granted Cullen Center in this case.

Our decision to reverse the court of appeals does not mean that Ms. Williams is, under all circumstances, free of liability for the overdraft. If upon a new trial the bank is able to demonstrate that Ms. Williams participated in the transaction which created the overdraft; was enriched by the overdraft; or, in some manner ratified the transaction creating the overdraft, the bank will be entitled to recover from her the amount of the overdraft. This position is consistent with the holdings in *Carney, McSweeney,* and *Derhammer I.*

The judgments of the courts below are reversed and this cause is remanded for a new trial.

McGEE, J., notes his dissent.