**FIRST TENNESSEE BANK, N.A.,**
**Plaintiff–Appellee,**

v.

**Sinan MUNGAN and Nancy Edmonds,**
**individually and d/b/a European**
**Casuals, Defendants–Appellants.**

Court of Appeals of Tennessee,
Eastern Section.

July 28, 1989.

Permission to Appeal Denied by
Supreme Court Oct. 30, 1989.

Maurice K. Guinn, Gentry, Tipton, Kizer & Little, P.C., Knoxville, for defendant-appellant, Nancy Edmonds.

Raymond E. Lacy, Lacy & Winchester, P.C., Knoxville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

Summary judgment was entered for the bank based on overdrafts in defendants' checking account.

Defendant Nancy Edmonds has appealed, insisting there are disputed issues of material fact and summary judgment was inappropriate. We agree, vacate the trial court's judgment and remand for further proceedings.

The record, in addition to pleadings, for purposes of summary judgment included a signature card signed by both defendants, a deposit agreement, the checks deposited in the defendants' checking account and later dishonored and the affidavit of a bank employee which stated in part: "[T]he Defendants drew on uncollected funds and are currently overdrawn in the amount of $14,-052.00".

In response, defendant Mungan's affidavit was filed which stated in pertinent part:

[T]he account in question at the First Tennessee Bank was opened, the business known as European Casuals was my business, and that Nancy Edmonds' name was placed upon the signature card for my convenience only, and that she at that time had no interest in the business known as European Casuals. That indeed one of the checks, check no. 3270 ... was made payable directly to me, and all of these checks were deposited by me in the account in question. That Nancy Edmonds further had nothing to do with transaction between myself [the third parties].

In granting summary judgment, the trial judge said the signature card was signed by "both the Defendants doing business as European Casuals" and further observed the defendants agreed to be bound by the terms of the deposit agreement on the account and entered judgment for the amount overdrawn plus attorneys' fees and costs against both defendants "jointly and severally, and doing business as European Casuals".

■ The principal issue on appeal is whether the statements of fact in Mungan's affidavit[1] are material to Edmunds' defense. T.C.A. § 47–4–401 provides that a bank may charge against its customer's account "any item which is otherwise properly payable from that account even though the charge creates an overdraft." Edmonds argues as a non-drawing cosigner she would not be liable, absent a written indemnity agreement or proof of her participation, enrichment or ratification of the transaction creating the overdraft.

■ In support of her position is *Williams v. Cullen Center Bank & Trust,*

---

1. The court was obliged to consider Mungan's affidavit in support of Edmonds' position. *Mer-* *ritt v. Wilson Cty. Bd. of Zoning Appeals,* 656 S.W.2d 846 (Tenn.App.1983).

685 S.W.2d 311 (Tex.1985), which held in reversing a summary judgment for a bank that "[a]bsent a written indemnity agreement or proof of benefit, . . . a nondrawing cosigner [cannot] be liable for an overdraft in a joint checking account." *Id.* at 312. On this issue, White & Summers in their treatise observed:

> Quaere whether a signatory on a joint account should always be free of liability for his partner's overdraft? We believe that there are some circumstances in which one party should be liable for his co-signatory's overdraft. One would be where both parties enjoyed the use of the funds. Another would be where there was an explicit agreement on the part of each co-signatory to be liable for the overdrafts of the other. Whether a term so stating in a deposit agreement ought to be recognized as a sufficiently explicit agreement we are unsure.... In general we would suggest that the agreement should be manifested by something stronger than the fine print on a deposit agreement before the bank should be permitted to hold a co-signatory on overdrafts of the other when the benefits of the overdraft were enjoyed only by one.

White & Summers, *Uniform Commercial Code* § 17–3 at p. 662 (2d ed. 1980).[2]

In the instant case, the "depositor agreement" contains no clear express indemnity agreement by Edmonds for the obligations created by the other "depositor".[3]

As a general rule, a non-drawing cosigner is not liable for a joint checking account overdraft which he did not create, authorize, participate in, benefit by or subsequently ratify. 86 C.J.S., *Tenancy in Common*, §§ 109, 116–7, 118–22 and 125.

Since the transactions fall within the ambit of the Uniform Commercial Code, we adopt the rationale of *Williams* which is in accord with the relatively few cases which have considered this issue. *See generally* Annot., 48 A.L.R.4th 1136, *Nondrawing Cosignor's Liability for Joint Checking Account Overdraft.*

Finally, it is argued that the pleadings constitute a judicial admission in that Mungan and Edmonds' answer signed by their attorney "individually and d/b/a European Casuals" denied the substantive allegations of the complaint and also filed a "cross-suit" [sic] against David Solomon and his business alleging "that the said Cross–Defendant [sic] obtained goods and property from your Cross–Plaintiffs [sic] and gave to your Cross–Plaintiffs [sic] the checks attached as Exhibit B of the original Complaint, that the said checks were returned for insufficient funds, which resulted in overdraft situation in your Cross–Plaintiffs' accounts".

■ The bank contends the foregoing constitutes a judicial admission that Edmonds was doing business as European Casuals and she did in fact benefit and/or

---

**2.** The Texas Supreme Court offered the following caveat in *Williams:*

> Our decision to reverse the court of appeals does not mean that Ms. Williams is, under all circumstances, free of liability for the overdraft. If upon a new trial the bank is able to demonstrate that Ms. Williams participated in the transaction which created the overdraft; was enriched by the overdraft; or, in some manner ratified the transaction creating the overdraft, the bank will be entitled to recover from her the amount of the overdraft.

685 S.W.2d at 315.

> The court also noted: "Nothing prohibits banks from placing express language in a joint deposit agreement making one cosigner liable for the overdrafts of the other. Not only does this provide a potential basis for liability but it also allows the commercial practice of paying overdrafts to continue."

*Id.* at 314.

**3.** The agreement provides: "Any overdraft amounts, however created, are due and payable by the depositor at once and the depositor agrees to reimburse the Bank for any expenses incurred by the Bank in the collection of these overdraft amounts, including attorney fees and court costs."

> The agreement fails to make clear by "express language", *Williams*, 685 S.W.2d at 314, or "explicit agreement", White and Summers at p. 662, that a nondrawing cosigner will be liable for any overdrafts by the drawing cosigner. We agree with commentators who urge: "the agreement should be manifested by something stronger than the fine print on a deposit agreement before the bank should be permitted to hold a co-signatory on overdrafts of the other when the benefits of the overdraft were enjoyed only by one." White and Summers, *supra*, § 17–3 at p. 662.

participate in the transaction with Solomon. Essentially, the defendants sought in the third party action indemnification of any judgment rendered against them in the original action. While these pleadings constitute evidential admissions, they are not conclusive.

The general rule is that factual statements in pleadings are judicial admissions being conclusive against the pleader in the proceedings in which they are filed unless they have been amended or withdrawn but under the latter circumstance continue to be evidentiary admissions. *Pankow v. Mitchell*, 737 S.W.2d 293 (Tenn. App.1987); *John P. Saad & Sons v. Nashville Thermal, Etc.*, 642 S.W.2d 151 (Tenn. App.1982), *appeal after remand on different grounds*, 715 S.W.2d 41 (Tenn.1986); *see generally* D. Paine, *Tennessee Law of Evidence*, § 55. Allegations in third party complaints and cross-claims for indemnification are not held to be conclusive judicial admissions precluding consideration of contrary evidence. *See e.g., Garman v. Griffin*, 666 F.2d 1156 (8th Cir.1981); *Douglas Equipment, Inc. v. Mack Trucks, Inc.*, 471 F.2d 222 (7th Cir.1972); *Continental Ins. Co. of New York v. Sherman*, 439 F.2d 1294 (5th Cir.1971); *Malauskas v. Tishman Construction Corp.*, 81 Ill.App.3d 759, 36 Ill.Dec. 875, 401 N.E.2d 1013 (1980). *Accord: Frank R. Jelleff, Inc. v. Braden*, 98 U.S.App.D.C. 180, 233 F.2d 671 (1956). While the pleadings establish evidential admissions the record presents disputed issues of material facts. Accordingly, summary judgment was improper and the cause is remanded for further proceedings consistent with this opinion, with costs of the appeal assessed to the appellee.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.