# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 28, 2015 Session

## CAMEO BOBO v. CITY OF JACKSON, TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C1492      Roy B. Morgan, Jr., Judge**

_____

**No. W2015-00386-COA-R3-CV – Filed December 4, 2015**

_____

Appellant filed suit against the City of Jackson after her home was demolished, asserting causes of action for trespass and inverse condemnation.  The City of Jackson filed an answer denying any liability and later moved for summary judgment on all claims.  After a hearing, the trial court determined that the trespass claim should be dismissed due to governmental immunity.  Moreover, the trial court concluded that Appellant had failed to timely assert her inverse condemnation claim.  Appellant appeals only the dismissal of her inverse condemnation claim.  Having reviewed the trial court's grant of summary judgment on that issue, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Jason D. Holleman and Cleveland D. Bain, Nashville, Tennessee, for the appellant, Cameo Bobo.

John D. Burleson and Matthew R. Courtner, Jackson, Tennessee, for the appellee, City of Jackson, Tennessee.

## OPINION

### Background and Procedural History

This case stems from the demolition of a home formerly located at 425 North Hays Street in Jackson, Tennessee.  The home at issue was previously owned by Appellant's grandmother, Dorothy Lipson ("Ms. Lipson").  While Ms. Lipson owned the home, its

condition deteriorated, and proceedings were initiated in the Environmental Court of the City of Jackson to address the state of the property. On October 21, 2010, the Environmental Court ordered Ms. Lipson to tear down the home within thirty days. Following the entry of that order, Ms. Lipson filed a timely appeal to the Circuit Court of Madison County. During the appeal proceedings in Circuit Court, Ms. Lipson's son, Odgra Bobo ("Mr. Bobo"), was apparently added as a party to represent his own interests and those of his mother as an attorney-in-fact. After a trial, the Circuit Court, in an order entered April 7, 2011, affirmed the decision of the Environmental Court and gave Ms. Lipson thirty days to demolish her home. Instead of demolishing the home as ordered, however, Ms. Lipson transferred the property to the Appellant, Cameo Bobo ("Ms. Bobo").[1] The transfer was effectuated by way of a quitclaim deed dated May 10, 2011. As a result of the transfer of the property to Ms. Bobo, the City of Jackson ("the City") filed a motion for show cause and contempt against Mr. Bobo, which was ultimately dismissed.

According to the City, Ms. Bobo was subsequently added as a party to the Circuit Court demolition proceedings. The City states that her name was not only included in the caption of subsequent pleadings but notes that her name was included on subsequent certificates of service that accompanied court papers. Ms. Bobo vehemently disputes that she was ever properly made a party to the demolition proceedings. In her brief, she argues that she "was never served with any notices by the City of any actions, orders or decisions, by the Court or by any municipal entity." Upon questioning at oral argument, counsel for the City acknowledged that there was no order in the record actually making Ms. Bobo a party to the demolition lawsuit.

In response to Ms. Lipson's failure to comply with the prior demolition order, the Circuit Court entered an order on August 20, 2012 stating that the City "shall" demolish the property. In so ordering, the Circuit Court also stated that the City was entitled to a lien for the cost of demolition not to exceed $6,000.00. Although Ms. Lipson subsequently filed a motion to set aside the August 20, 2012 order, the Circuit Court denied her motion by order entered on January 18, 2013. The home was later demolished by the City.

On April 25, 2013, Ms. Bobo claims she discovered that the City had demolished her home.[2] Nearly a year later, on April 22, 2014, she commenced the present action against the City by filing a complaint in the Circuit Court of Madison County for trespass and inverse

---

[1] The deed transferring the property was executed by Mr. Bobo as attorney-in-fact for Ms. Lipson.

[2] The record does not evidence a definitive agreement between the parties as to when the home was actually demolished. In her appellate brief, Ms. Bobo lists the date of demolition as April 25, 2013. In the City's brief, the City makes a passing reference to the fact that it began demolishing the property in April 2013.

condemnation. According to her complaint, she was never served with any notices and was never properly made a party to the prior demolition lawsuit in Circuit Court. She further claimed that she never received any court orders related to the pending demolition, thereby depriving her of the "opportunity to renovate the structure and/or remove valuable . . . items."

In July 2014, the City filed an answer to Ms. Bobo's complaint.[3] The City's answer denied that Ms. Bobo was entitled to any of the relief sought in her complaint and raised a number of defenses. Among the defenses raised were the statute of limitations and governmental immunity. On September 19, 2014, the City filed a motion for summary judgment. The motion asserted that Ms. Bobo's action was barred by the statute of limitations, argued that she could not state a prima facie case for inverse condemnation, and suggested that the City retained immunity with respect to Ms. Bobo's trespass claim. A supporting memorandum of law and statement of undisputed material facts were filed contemporaneously with the motion. In advancing its argument that Ms. Bobo's inverse condemnation claim was barred by the applicable one-year statute of limitations, the City stated in its memorandum of law that Ms. Bobo had been a party to the demolition proceedings and was therefore well-aware that the home had been ordered to be demolished. According to the City, Ms. Bobo should have reasonably realized that the home was threatened with permanent injury at least by January 18, 2013, the date Ms. Lipson's motion to set aside was denied. Ms. Bobo filed a response to the City's motion for summary judgment on December 29, 2014. Therein, Ms. Bobo stressed that she was never made a party to the demolition proceedings.[4]

A hearing on the City's motion for summary judgment took place on January 5, 2015. At the conclusion of the hearing, the trial judge orally ruled that summary judgment should be entered in favor of the City. An order granting the City's summary judgment motion was subsequently entered on January 30, 2015. Therein, the trial court memorialized three primary rulings made at the January 5 hearing. First, the trial court granted summary judgment in favor of the City on Ms. Bobo's trespass claim, specifically concluding that the City retained immunity under the Governmental Tort Liability Act. Second, the trial court rejected the City's argument that Ms. Bobo failed to present a prima facie case of inverse condemnation. Nevertheless, the trial court concluded that the inverse condemnation claim

---

[3] We note that two answers were technically filed in this case. The first answer was filed on July 1, 2014. The second answer was filed on July 2, 2014. As far as we are able to discern, both answers are identical in form and substance, save for the respective filing date stamps affixed by the trial court clerk.

[4] Ms. Bobo also disputed the City's assertion that the statute of limitations could start running as of the date of a judicial ruling. In her response to the summary judgment motion, she suggested that the statute of limitations could not start running until the City took some physical action pertaining to the threatened demolition.

3

should be dismissed. The trial court held that the statute of limitations began to run on Ms. Bobo's claim on January 18, 2013, the date Ms. Lipson's motion[5] to set the demolition order aside was denied. As such, the trial court determined that Ms. Bobo's April 22, 2014 complaint was not filed within the applicable one-year limitation period. Shortly after the entry of the order granting the City's motion for summary judgment, Ms. Bobo filed a timely notice of appeal.

## Issue Presented[6]

In her appellate brief, Ms. Bobo raises only one issue for our review, restated verbatim as follows:

1. Did the trial court err by finding that Plaintiff Cameo Bobo filed her inverse condemnation claim against Defendant City of Jackson, Tennessee after the applicable statute of limitations set forth in Tenn. Code Ann. § 29-16-124?

## Standard of Review

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citation omitted). When the moving party does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, __S.W.3d__, No. W2013-00804-SC-R11-CV, 2015 WL 6457768, at *22 (Tenn. Oct. 26, 2015). Because resolving a motion for summary judgment is a question of law, we review the trial court's disposition on the issue *de novo* without a presumption of

---

[5] We observe that the trial court's order mistakenly refers to the motion as one that was filed by Ms. Bobo.

[6] Although the City's brief raises issues in support of the trial court's dismissal of Ms. Bobo's trespass claim, we find it unnecessary to review the merits of that claim in this appeal. As the City's brief observes, Ms. Bobo's appellate brief fails to challenge the dismissal of her trespass claim. As such, we agree with the City that any issues concerning the trespass claim are waived. *See State v. Freeman*, 402 S.W.3d 643, 653 (Tenn. Ct. App. 2012) (stating that an issue is waived when not presented in the statement of the issues section of the appellate brief).

correctness. *Martin*, 271 S.W.3d at 84 (citation omitted). Indeed, we must make a fresh determination that the requirements of Rule 56 have been satisfied in each case. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). In assessing the propriety of the motion, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84 (citation omitted).

## Discussion

The sole issue of contention on appeal is whether Ms. Bobo's inverse condemnation claim is barred by the statute of limitations. Whereas the City asserts that her claim is time-barred, Ms. Bobo argues to the contrary. Before examining whether there are any genuine issues of material fact pertaining to this question, we are compelled to address the essence of the City's legal theory and whether it is in accord with the case law interpreting the statute of limitations applicable to inverse condemnation claims.

In asserting that Ms. Bobo was a party to the demolition proceedings in Circuit Court, the City argues that the statute of limitations began to run on January 18, 2013, when Ms. Lipson's motion to set the demolition order aside was denied. According to the City, Ms. Bobo should have reasonably realized that her home had sustained a permanent injury by that date. As such, the City argues that Ms. Bobo's April 22, 2014 complaint, filed more than one year after the January 18, 2013 date, is time-barred.

We observe that in her appellate brief, Ms. Bobo challenges the legal validity of the City's theory. According to Ms. Bobo, the statute of limitations could not begin to run until the City brought heavy equipment onto her property in April 2013 to demolish her home. In support of this position, she notes that "the plain language of the applicable statute of limitations provides that the time for filing an inverse condemnation [action] runs 'after the land has been actually taken possession of, and the work of the proposed internal improvement begun.'" In order to evaluate the merits of the parties' respective positions, we now turn to the statute governing the limitation period for inverse condemnation claims and the case law that has interpreted it.

The statute of limitations applicable to inverse condemnation claims is codified at Tennessee Code Annotated section 29-16-124. Under the version of the statute applicable to this action,[7] the limitation period was defined as follows:

---

[7] The first sentence of the statute was amended slightly, effective July 1, 2015. The 2015 amendment substituted "All actions that could be brought under § 29-16-123(a), regardless of the cause of action or remedy sought, including actions for trespass or nuisance, shall be commenced" for "The owners of land shall, in such cases, commence proceedings[.]" Acts 2015, ch. 275, § 2.

The owners of land shall, in such cases, commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun; saving, however, to unknown owners and nonresidents, twelve (12) months after actual knowledge of such occupation, not exceeding three (3) years, and saving to person under the disabilities of infancy and unsoundness of mind, twelve (12) months after such disability is removed, but not exceeding ten (10) years.

Tenn. Code Ann. § 29-16-124 (2012).

Although the language of the statute "envisions a physical possession or intrusion upon the land," its interpretation has not been so limited. *See STS/BAC Joint Venture v. City of Mt. Juliet*, No. M2003-00171-COA-R3-CV, 2004 WL 2752809, at *8 (Tenn. Ct. App. Dec. 1, 2004). Indeed, although the statute "is couched in terms of physical takings, it applies equally to all takings claims." *B & B Enterprises of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 846 (Tenn. 2010) (citation omitted). A "taking" of an individual's real property occurs when a governmental defendant pursues any action "which destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn. 1977). "The questions of what amounts to a taking in a particular case, and of when the taking is completed so as to give rise to a cause of action and start the running of the statute of limitations, depend on the facts in each case." *Davidson Cnty. v. Beauchesne*, 281 S.W.2d 266, 270 (Tenn. Ct. App. 1955). As the Tennessee Supreme Court stated, "the onus is on the property owner to institute his suit within one year after he realizes or should reasonably realize that his property has sustained an injury which is permanent in nature." *Knox Cnty. v. Moncier*, 455 S.W.2d 153, 156 (Tenn. 1970). "The statute of limitations should be applied in such a manner that the landowner will have the one year period within which to bring his suit 'after injury or after reasonable notice or knowledge of such injury and damage.'" *Id.* (quoting *Morgan Cnty. v. Neff*, 256 S.W.2d 61, 62-63 (Tenn. Ct. App. 1952)).

Having reviewed the case law interpreting the limitation period provided for by Tennessee Code Annotated section 29-16-124, we reject Ms. Bobo's assertion that her cause of action could not have accrued until April 2013 when her home was physically demolished. The occurrence of a "taking" or permanent injury within the meaning of the statute is not necessarily contemporaneous to the manifested harm about which the plaintiff ultimately complains. If sufficient facts exist to show that the plaintiff should reasonably realize that some type of permanent injury has occurred, the running of the limitation period will commence at that point. This Court's decision in *Wyatt v. Lake County Tennessee*, 1991 WL 138516 (Tenn. Ct. App. July 30, 1991), is instructive of this principle. The plaintiffs in *Wyatt* sued the county for inverse condemnation, claiming that the county's installation of a

culvert had resulted in substantial flooding of their property.  *Id.* at *1.  The proof showed that the county had installed the culvert at issue on September 5, 1983, and in November or December of the same year, approximately twenty acres of the plaintiffs' property was flooded.  *Id.*  The plaintiffs ultimately filed their inverse condemnation action on September 24, 1984.  *Id.*

Upon appeal of the trial court's dismissal of the case, we analyzed the matter to determine whether the complaint was timely asserted within the one-year limitation period. In holding that the action was time-barred, we noted that one of the plaintiffs testified in his deposition that he had known that the culvert would not provide adequate drainage for the property from the moment the county had installed it.  *Id.* at *3.  In fact, his testimony indicated that he had discussed this fact with engineers during the installation process.  *Id.* In explaining our conclusion that the plaintiffs' cause of action had accrued at the beginning of September 1983, we stated as follows:

> [T]he injury that constituted the "taking" took place in early September, 1983, when one of the co-owners of the property became aware that a permanent culvert installed under the ramp would not drain the water because of the culvert's position and the fact that it was undersized. *This should have put him on notice*.

*Id.* at *4 (emphasis added).

Although Ms. Bobo cites to some authority to suggest that a physical injury must manifest before the limitation period begins to run, we conclude that the cases to which she cites are distinguishable from the principle illustrated in *Wyatt*.  As the City has observed, none of these cases involve facts showing that the plaintiff should have reasonably realized a permanent injury had occurred before the physical injury manifested.  Consider, for instance, this Court's decision in *Jones v. Cocke County*, 420 S.W.2d 587 (Tenn. Ct. App. 1967), an opinion that is relied upon by Ms. Bobo in her appellate brief.  In *Jones*, plaintiffs brought an action for inverse condemnation when their land was flooded as a result of a bridge embankment constructed by the highway department.  *Id.* at 588.  Although the lawsuit was not filed until approximately five years after the completion of the embankment, we held that the case was timely commenced inasmuch as it was filed within one year of the flooding to the land.  *Id.* at 589.  Although *Jones* may appear, at least upon cursory examination, to stand for the proposition that there must always be some type of physical invasion to a landowner's property before the limitation period begins to run, we decline to read this holding into its opinion.  As we have already alluded to, there were no facts in *Jones* expressly indicating that, at the time of the embankment's construction, the plaintiffs knew or should have known that the embankment would result in flooding to their property.  If such facts had been

7

established, similar to the facts that existed in *Wyatt*, we submit that a different result would have been necessary.

Under the reasoning espoused in *Wyatt*, we must reject the assertion that the limitation period could not begin to run in this case until the City physically demolished the home at issue. If sufficient facts existed showing that Ms. Bobo was aware and put on notice of the impending demolition of the property, we are of the opinion that such notice would commence the limitation period, irrespective of the fact that this notice would be chronologically prior to the manifested harm of demolition. Of course, this begs the question: did facts establishing such notice exist in this case?

As already discussed, the City argues that Ms. Bobo received notice of the impending demolition by virtue of being a party to the Circuit Court demolition proceedings. It contends that because she was a party to that prior case, she should have reasonably realized her injury at the latest by January 18, 2013,[8] thereby making her April 2014 complaint untimely. The trial court's January 30, 2015 order accepted this argument as a valid one and dismissed Ms. Bobo's inverse condemnation claim after concluding that she was a party to the demolition proceedings.[9]

Although we disagree with the trial court's basis for its decision, we nevertheless conclude that the entry of summary judgment should be affirmed on other grounds. Preliminarily, we observe that Ms. Bobo's party status relative to the demolition proceedings was never asserted as a material fact in the City's filed statement of undisputed facts. Her party status was referenced throughout the City's memorandum filed in support of its summary judgment motion, but again, it was never formally posited as a material fact pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure. Ms. Bobo's counsel alerted the trial court to this fact during the summary judgment hearing, stating as follows:

> Let me, if I can, talk just a little bit about the issue [of Ms. Bobo being a party] because I do want to point out that while that was in defendant's pleadings, you know, that was not one of the material facts that was -- that was pled in the

---

[8] Again, January 18, 2013 was the date on which the Circuit Court denied Ms. Lipson's motion to set the demolition order aside.

[9] In part, the trial court's summary judgment order incorporated its prior oral findings from the summary judgment hearing. The following findings were among those that were incorporated: "[I]n this case as you look at the record . . . [Ms. Bobo] was properly before the Court by court order. Numerous contacts [were] made as is argued and evidenced by what's been filed for purposes of this motion today. And based upon the entire record, she was a party."

statement of material facts as to whether or not she was a party. Obviously had it been, we would have objected to that.

Despite this statement by Ms. Bobo's counsel, the trial court ultimately found it appropriate to consider the party issue in conjunction with its ruling on the City's request for the entry of summary judgment. In relevant part, the trial court stated as follows:

I still recall the comments of [Ms. Bobo's counsel]. He said he didn't know if we really had to rule on whether she was a party or not today, was it really necessary. But the Court's going to specifically make findings today so you will have that, and that way you'll be able to review it and determine what you need to do next. I do find from what's proper consideration on the record for purposes of summary judgment that I will go ahead and address this issue of whether or not Ms. Cameo Bobo was a party.

Although a trial court may waive the requirements of Rule 56.03 in an appropriate case, *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001), we caution trial courts that the nonmoving party in a summary judgment proceeding should be sufficiently apprised of the moving party's asserted basis for summary judgment. If the moving party contends that a particular fact is material to the entry of summary judgment in his or her favor, the nonmoving party should not be deprived of the opportunity to show that there is a genuine issue as to the existence of that fact. In this case, because the City's statement of undisputed material facts did not assert that Ms. Bobo was a party in the demolition proceedings, Ms. Bobo was arguably not alerted to this issue as being material to the City's request for summary judgment. Being alerted to the issue would have allowed Ms. Bobo the opportunity to marshal evidence in her favor showing that a genuine issue of fact existed as to her party status. Indeed, as Ms. Bobo's counsel stated at the summary judgment hearing, if the City had asserted in its statement of undisputed facts that Ms. Bobo was a party to the demolition proceedings, "[she] would have objected to that."

With all that said, we cannot ultimately conclude that the trial court erred in considering the party issue in connection with its summary judgment ruling. The City's memorandum of law made clear that the party issue was of material importance to the City's legal position regarding the statute of limitations, and Ms. Bobo's response to the summary judgment motion reflected a specific awareness of this fact. In fact, the first substantive sentence of Ms. Bobo's summary judgment response stated as follows: "While Plaintiff does not dispute the overall procedural history set forth by Defendant, she strongly disputes one key fact: namely, that she, as the owner of the property in question, was never made a party to those proceedings." Moreover, we observe that, during the summary judgment proceeding in this case, Ms. Bobo referenced a portion of the demolition record that contradicted those

9

portions of the record relied upon by the City to establish that Ms. Bobo had been a party to the prior Circuit Court action. Based on her actions in defending against the summary judgment motion, she was clearly on notice that the City deemed her party status in the demolition proceedings to be an issue of central importance. Further, even assuming *arguendo* that it was improper for the trial court to consider Ms. Bobo's party status in the demolition proceedings as a fact upon which summary judgment could be entered, we cannot conclude that she was ultimately prejudiced. Although the trial court ruled in favor of the City regarding the party issue, expressly finding that Ms. Bobo had been a party to the demolition proceedings, we are of the opinion that this conclusion was in error.[10]

In support of its position that Ms. Bobo had been a party in the prior Circuit Court action, the City's summary judgment memorandum cited to a number of documents that were filed in the record of the demolition proceedings. For example, it noted that Ms. Bobo's name was included on several certificates of service and that her name was listed in the caption of many pleadings. Although these facts do not appear to be in dispute, they do not establish that Ms. Bobo was a party to the demolition proceedings. The City conceded at oral argument that there was no order from the court ever bringing Ms. Bobo into the prior Circuit Court case, and no evidence of a record was ever offered showing that Ms. Bobo had been served with process. The mere appearance of Ms. Bobo's name in a caption or certificate of service does not indicate that she was a party, nor does it affirmatively indicate that she was apprised of the proceedings that were taking place.[11]

In addition to relying on the inclusion of Ms. Bobo's name in captions and certificates of service, the City's summary judgment memorandum referenced two specific orders that it believed established Ms. Bobo's party status. First, it referenced an order from September 7, 2011 that suggested Ms. Bobo had consented to adding a third party to the demolition proceedings. Second, it referenced an order from August 20, 2012 that stated Ms. Bobo had been added as a defendant on October 21, 2011. While we would agree with the City that a trial court speaks through its orders, these orders are not consistent with one another, and their purported significance is contradicted with evidence that was read into the record by Ms. Bobo's counsel at the summary judgment hearing. At the outset, it should be clear that the chronology of the two orders is inconsistent. The September 7 order appears to suggest

---

[10] Because we cannot affirm the trial court's conclusion regarding Ms. Bobo's party status, any potential injustice resulting from the City's failure to properly comply with Rule 56.03 on that issue is of no moment.

[11] In addition to referencing certificates of service, the City referenced several letters sent in the demolition proceedings on which Ms. Bobo was allegedly copied. For what it is worth, we note that the presentation of Ms. Bobo's address is not entirely consistent among these documents. For example, although several certificates of service list her zip code as "37204," there are places in the demolition record where her zip code is listed as "37219."

10

that Ms. Bobo was a proper party before the Court at that point in time, but the later order suggests that Ms. Bobo was not added as a defendant until October 2011. Although this apparent inconsistency may simply concern whether Ms. Bobo was a party to the proceedings before October 2011, further evidence from the demolition record calls into question whether the referenced orders are even a sound basis upon which to conclude that Ms. Bobo was a party.

The City relied upon the August 20, 2012 order because it suggested that Ms. Bobo was added as a defendant on October 21, 2011. In pertinent part, the terms of the August order specifically stated as follows: "Both Cameo Bobo and Select Portfolio Servicing, Inc. were added as additional defendants on October 21, 2011." Although the order references the October 21, 2011 date, we observe that the order actually entered on October 21, 2011 only added Select Portfolio Servicing, Inc. as a defendant. Further, we note that although the orders referred to by the City may appear to suggest that Ms. Bobo was a party to the demolition proceedings in early fall 2011, this is contradicted by statements made by the Circuit Court Judge presiding over the case during that time. At the summary judgment hearing, Ms. Bobo's counsel read into the record a portion of a transcript from a hearing that that took place in November 2011. In relevant part, the then-presiding Circuit Court Judge stated as follows regarding Ms. Bobo's party status: "'I'm very reluctant to order Cameo Bobo to pay anything here because she's not - - I mean, I've looked back. **We never made her a party**.'" (emphasis added).

Having reviewed the materials considered by the trial court in this case, we cannot agree with its conclusion that Ms. Bobo was a party to the demolition proceedings. The portions of the demolition record that were provided to the trial court at the summary judgment stage of the litigation do not establish this fact.[12] Although it was thus error for the trial court to hold that Ms. Bobo's inverse condemnation claim was time-barred on the basis that she was a party to the prior Circuit Court action, that does not end our inquiry. In general, the essence of the City's theory at summary judgment was that Ms. Bobo's inverse condemnation claim was barred because it was not filed within one year of when she should have reasonably realized that her property sustained an injury that was permanent in nature. Although the City posited that the notice triggering the running of the statute of limitations was established by way of Ms. Bobo's party status in the demolition proceedings, it does not follow that her party status is necessary to establishing her notice of the property's impending demolition. If facts existed showing that she had such notice more than a year prior to the

---

[12] "The Tennessee Supreme Court has held that: '[s]uccessful amendments [to add a defendant] require four discrete actions . . . : (1) the filing and (2) granting of a motion to amend, (3) the filing of an amended complaint, and (4) the issuance of process.'" *City of Oak Ridge v. Levitt*, No. E2014-02354-COA-R3-CV, 2015 WL 6164740, at *7 (Tenn. Ct. App. Oct. 21, 2015) (quoting *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, 193 S.W.3d 564, 570 (Tenn. 2006)).

11

filing of her complaint, we would agree that the establishment of these facts would serve as a bar to the maintenance of her asserted legal claim.

As with the issue of Ms. Bobo's party status in the demolition proceedings, it is true that the City's statement of undisputed material facts did not contain any assertion that Ms. Bobo had notice of any of the demolition orders pertaining to the property. Moreover, aside from the evidence offered to show that Ms. Bobo was a party to the demolition proceedings, the City cited to no evidence in the record to demonstrate that Ms. Bobo was aware that her home was subject to demolition more than a year before her complaint was filed. Having carefully reviewed the record transmitted to us on appeal, however, we cannot conclude that there is a genuine issue of fact for trial. Although we acknowledge that there is no admission in the record where Ms. Bobo specifically states that she was aware of the impending demolition more than a year prior to the filing of her complaint, another admission in the record readily establishes a basis for concluding that Ms. Bobo should be charged with such knowledge. Under the particular facts of this case, we are of the opinion that such charged knowledge negates the substantive merits of her asserted inverse condemnation claim.

Our opinion on this matter is tied directly to the admission made in paragraph nine of Ms. Bobo's complaint. Therein, Ms. Bobo asserted as follows:

> 9. At the time that the Bobo Property was passed to Plaintiff, she had a general awareness of pending proceedings in Madison County Circuit Court ("the Court") related to the condition of the historic family home on the property, which had deteriorated due to Plaintiff's grandmother's inability to maintain the property as she had aged and experienced significant health conditions.

Even though this admission does not, by itself, conclusively establish that Ms. Bobo had knowledge of a demolition order at the time she acquired the property by transfer, it nonetheless evidences that she had knowledge of facts sufficient to place her on inquiry notice that title to the property was clouded. As a general matter, we note that a purchaser of real property is subject to prior interests related to the property, even if unrecorded, if the purchaser has notice of some fact or facts that would elicit further inquiry and such inquiry would disclose the existence of the prior interests. *See generally Washington Mut. Bank v. N.K.T. Land Acquisitions Inc.*, No. M2007-02040-COA-R3-CV, 2008 WL 2925299, at *10 (Tenn. Ct. App. July 23, 2008) (holding that mortgagee could not avoid the effect of a subordination agreement if the facts suggested further inquiry and the inquiry, when undertaken in good faith and reasonable diligence, would have revealed the subordination of the mortgage to be acquired). As our state Supreme Court has previously described inquiry notice:

While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," *Moore v. Cole,* 200 Tenn. 43, 51, 289 S.W.2d 695, 698 (1956), another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice. "'The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" *Texas Co. v. Aycock,* 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Even a good faith failure to undertake the inquiry is no defense. *Id.,* 190 Tenn. at 28, 227 S.W.2d at 46. Thus, "'[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.'" *City Finance Co. v. Perry,* 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted).

*Blevins v. Johnson Cnty.,* 746 S.W.2d 678, 683 (Tenn. 1988). "Inquiry notice exists when a purchaser has notice of some fact that, in accordance with human experience, is sufficiently curious or suspicious that the purchaser should be obliged to make a further inquiry into it." 77 AM. JUR. 2D *Vendor and Purchaser* § 385 (2006).

In this case, Ms. Bobo has admitted to having knowledge that proceedings concerning the condition of the property were pending in Circuit Court at the time she acquired the property at issue.[13] We are of the opinion that such knowledge was sufficient to enable a reasonably cautious and prudent person to investigate the nature of the Circuit Court proceedings. Moreover, we conclude that a reasonably diligent investigation into the matter would have revealed the existence of a demolition order pertaining to the property. There is no dispute that the Circuit Court affirmed the Environmental Court's order of demolition by judgment entered on April 7, 2011. Moreover, there is no dispute that Ms. Bobo acquired the property at issue on May 10, 2011. Had Ms. Bobo pursued even a minimal investigation into the state of the Circuit Court proceedings at the time she acquired the property, she would have discovered that a demolition order had already been obtained. As such, she is deemed to have notice of that fact. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 485 (Tenn.

---

[13] Factual statements in pleadings are conclusive against the pleader in proceedings in which they are filed unless amended or withdrawn. *First Tenn. Bank, N.A. v. Mungan*, 779 S.W.2d 798, 801 (Tenn. Ct. App. 1989).

2012) (citations omitted) (noting that inquiry notice is notice of all the facts to which the elicited inquiry will lead when pursued with diligence and good faith).

Despite Ms. Bobo's assertions that she never received a copy of any of the Circuit Court orders pertaining to the demolition of the property, the record establishes that she had inquiry notice of the April 7, 2011 demolition judgment at the time she acquired the property. Because she had inquiry notice of the order of demolition, Ms. Bobo took the property subject to the City's interest in having obtained the order. Under such circumstances, we fail to see how her inverse condemnation claim has substantive validity, even accepting all the allegations in the complaint as true. Having acquired the property with inquiry notice that the City had already obtained a demolition order, she has no right to complain about the fact that the property was ultimately demolished. If she desired to retain the property free from any threatened demolition, it was incumbent upon her to take actions to set aside the demolition order or pursue other appropriate relief. Therefore, albeit for different reasons, we affirm the trial court's grant of summary judgment.[14]

## Conclusion

For the foregoing reasons, the trial court's entry of summary judgment in favor of the City is hereby affirmed. Costs of this appeal are assessed against the Appellant, Cameo Bobo, and her surety, for which execution may issue if necessary. This cause is remanded to the trial court for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[14]Although the trial court granted summary judgment based on its erroneous conclusion that Ms. Bobo was a party to the demolition proceedings, we are entitled as an appellate court to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision. *See Pier v. Jungkind*, 427 S.W.3d 922, 930 (Tenn. Ct. App. 2013) (citing *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001)).